**WEEKLEY HOMES, L.P. d/b/a David Weekley Homes, Weekley Homes Business Trust, David Weekly, and Randy Braden, Appellant,**

v.

**Len RAO, Appellee.**

No. 05–10–00570–CV.

Court of Appeals of Texas, Dallas.

March 22, 2011.

David Fowler Johnson, Winstead PC, Jennifer Lovelace, Fort Worth, TX, Thomas E. Reddin, Winstead PC, Joel Wilson Reese, Reese Gordon Marketos, LLP, A. Erin Dwyer, Figari Davenport & Graves, L.L.P., Marcus D. Brown, Dallas, TX, for Appellant.

Evan Lane (Van) Shaw, Janet R. Randle, Law offices of Van Shaw, for Appellee.

Before Justices RICHTER, LANG, and MYERS.

## OPINION

Opinion By Justice LANG.

Weekley Homes, L.P. d/b/a David Weekley Homes, Weekley Homes Business Trust, David Weekley, and Randy Braden ("Weekley Parties") appeal the trial court's denial of their plea in abatement and motion to compel arbitration. In a single issue, the Weekley Parties argue the trial court erred in denying their motion because, according to them, the uncontradicted evidence proved (1) the existence of a valid arbitration agreement; (2) appellee Len Rao's claims against them fell within the scope of that agreement; and (3) all of the appellants could enforce the agreement.

In order to resolve these issues, we must determine whether the arbitration agreement described in the Weekley Homes Team Member Handbook ("Handbook") is enforceable against its former employee, Len Rao because the promise of Weekley Homes to arbitrate is binding, or whether a provision in the Handbook stating "Policies are not to be interpreted as a promise by the Company that any particular situation will be handled in the express manner set forth in the text" causes the promise by Weekley Homes to arbitrate to be illusory. If it is an illusory promise, the arbitration agreement is unenforceable. Because we conclude the promise of Weekley Homes to arbitrate was, indeed, illusory, the agreement to arbitrate is not enforceable. Accordingly, we affirm the trial court's order and remand this case for further proceedings consistent with this opinion.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Len Rao ("Rao"), a former Division President of Weekley Homes, L.P., filed suit against the Weekley Parties alleging a number of causes of action against Weekley Homes and the Weekley Homes Business Trust, including breach of contract, promissory estoppel and detrimental reliance, accounting and constructive trust, conversion, money had and received, breach of fiduciary duty, and breach of trust agreement. Additionally, the petition alleged libel, slander, defamation, and aiding and abetting against Weekley Homes, David Weekley, and Randy Braden. The Weekley Parties responded by filing a Plea in Abatement and Motion to Compel Arbitration, in which they claimed, *inter alia*, Rao had agreed to arbitrate any and all claims against Weekley Homes by virtue of having notice of, and accepting, the company's Dispute Resolution Policy. Rao responded to the motion to compel arbitration by arguing, *inter alia*, that he did not agree to the "arbitration language" in the Dispute Resolution Policy contained in the Handbook "as the document, by its own terms was not a binding agreement, and any alleged 'promise' made within the

document was illusory." After a hearing, the trial court denied the Weekley Parties plea in abatement.

The Weekley Parties timely filed their notice of appeal. We granted an emergency motion to stay proceedings, pending this interlocutory appeal. We then clarified our earlier stay order to make it clear that it only applied to the cause pending in the trial court below. Then, appellants filed a motion to declare pleading void, to find appellee in contempt, and for sanctions. We ordered that motion to be carried with the case. Finally, Rao filed a motion to stay an arbitration proceeding filed by Weekley Homes during the pendency of this appeal, *American Arbitration Association Case No. 71 460 00493 10 Weekley Homes, L.P. v. Len Rao*. According to the Weekley Parties, the subject of that proceeding is a breach of fiduciary duty claim by Weekley Homes against Rao. Rao argued that proceeding should not proceed because it is based on the arbitration clause at issue in this appeal. We granted Rao's motion.

The record contains three documents that are pertinent to our decision: (1) the Handbook, (2) a four-page document titled *"DISPUTE RESOLUTION POLICY"* ("Dispute Resolution Policy") (emphasis original), and (3) an email sent from PeopleServices@dwhomes.com to Rao on March 1, 2007 ("Weekley email").

The copy of the Handbook in the record is a printed version of a web page that was distributed electronically to all Weekley Homes employees, including Rao. It is thirty-eight pages long and covers a broad range of topics, including, *inter alia,* job classifications, paid time off, benefits, and other policies. Under a section titled "THE PURPOSE OF THIS HANDBOOK" is the following statement:

> The purpose of this handbook is to present you with a quick and easy reference for David Weekley Homes Team Members. In general, this handbook helps to outline the views and values of the company. Every Team Member is given a handbook so that supervisors and Team Members have an identical reference point to discuss and resolve situations that may arise within the Company.
>
> **It is important to point out that this handbook is not a contract of employment.**
>
> **Policies are not to be interpreted as a promise by the Company that any particular situation will be handled in the express manner set forth in the text.**
>
> **Policies are not to be implied or inferred.**
>
> **All employment is at-will. "At-will" means that your employment can be terminated at any time by you, OR the Company, with or without cause, and/or with or without notice.**
>
> **The handbook shall not bind the Company to employ any individual.**
>
> These policies may not be orally modified and only the President of the Company or his appointed representative may approve changes to this handbook. If changes are approved, you will receive notification that additional supplements detailing the new policies have been added. Any questions concerning the interpretation, intent, or procedures should be directed to your immediate supervisor or a People Services Representative.

(emphasis original).

The table of contents of the Handbook describes several sections, including the "DWH POLICIES SECTION." Within that list of policies is a section entitled "DISPUTE RESOLUTION." On the page of the Handbook that corresponds with "DISPUTE RESOLUTION," there is

a summary of the resources available at Weekley Homes for dispute resolution, including the following language:

> ANY CLAIM, CONTROVERSY OR OTHER DISPUTE RELATING TO YOUR EMPLOYMENT, SEPARATION FROM THE COMPANY, OR FOLLOWING SEPARATION FROM THE COMPANY, SHALL BE RESOLVED BY ARBITRATION, IN LIEU OF JURY TRIAL OR ANY OTHER LEGAL PROCEEDING, PURSUANT TO THE FEDERAL ARBITRATION ACT (TITLE 9, UNITED STATES CODE), AND IN ACCORDANCE WITH THIS DISPUTE RESOLUTION POLICY.

(emphasis original).

The second document, the four-page Dispute Resolution Policy, to which one may connect by computer "link" from the Handbook's DISPUTE RESOLUTION section, contains broad language providing, *inter alia*, that any claim or dispute relating to "employment, separation from the company, or following separation from the company, shall be resolved by arbitration" under the Federal Arbitration Act ("FAA").[1]

The third document is an email from PeopleServices@dwhomes.com to Rao dated March 1, 2007 that confirms Rao's earlier receipt of the Handbook. Rao acknowledges receiving this email and the Handbook. He stated in an affidavit that "I never viewed [the email] as my agreement to arbitrate anything. It was simply an acknowledgment, after being hounded

consistently by HR, that I had in fact received the document." The subject line of the email reads: "David Weekley Homes Team Member Handbook" and the body states:

> Thank you for acknowledging receipt of the on-line David Weekley Homes Team Member Handbook. This is a confirmation that you understand and agree to abide by the policies and procedures stated in the Team Member Handbook in connection with your employment at David Weekley Homes, and that you acknowledge that revisions to the handbook may occur, and it is your responsibility to be knowledgeable of these changes as they are communicated.

## II. JURISDICTION

■ In a cross-point, Rao asks us to dismiss this appeal, arguing this Court lacks jurisdiction over this appeal because there is no "valid agreement." Rao contends that "[w]ithout a finding by this court that the agreements at issue are valid agreements between the parties to arbitrate under the F.A.A., Civil Practice and Remedies Section § 51.016 does not confer jurisdiction on this Court over this matter unless Appellants can established [sic] that this matter is *subject to the Federal Arbitration Act*." (emphasis original). We disagree.

■ We review de novo whether this Court has jurisdiction over an appeal because jurisdiction is a legal question. *IFS Sec. Group, Inc. v. Am. Equity Ins. Co.,*

---

1. We note that the content of the first four paragraphs of the four-page Dispute Resolution Policy is identical to the parts of the Handbook titled "DISPUTE RESOLUTION," "THE OPEN DOOR POLICY," and "MEDIATION AND ARBITRATION." The rest of the four-page Dispute Resolution Policy not reproduced in these sections of the Handbook includes provisions describing (1) exclusions from arbitration, (2) initiation of arbitration, (3) initiation of mediation, (4) and arbitration procedures, (5) review and appeal of award, and (6) a concluding paragraph that states the policy does not establish "any other terms of your employment" and that the People Services Department should be contacted for more information.

175 S.W.3d 560, 562 (Tex.App.-Dallas 2005, no pet.) (citing *Parks v. DeWitt County Elec. Co-op., Inc.,* 112 S.W.3d 157, 160 (Tex.App.-Corpus Christi 2003, no pet.)). If the record does not affirmatively demonstrate the appellate court's jurisdiction, the appeal must be dismissed. *Id.*

Section 51.016 of the Texas Civil Practice and Remedies Code directs us to hear interlocutory appeals under the same circumstances permitted by the Federal Arbitration Act ("FAA"), when the dispute is subject to the FAA. TEX. CIV. PRAC. & REM.CODE ANN. § 51.016 (West Supp.2010); *see also In re Kellogg Brown & Root,* 80 S.W.3d 611, 617 (Tex.App.-Houston [1st] 2002, no pet) (a matter is subject to the FAA either when the parties agree to arbitrate under the FAA, or when the transaction at issue "affects or involves interstate commerce."). The FAA states that "[a]n appeal may be taken from ... an order ... denying an application ... to compel arbitration." 9 U.S.C. 16(a)(1)(C); *see also Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.,* 327 S.W.3d 859, 861 (Tex.App.-Dallas 2010, no pet.)(considering an interlocutory appeal from a trial court's denial of a motion to compel arbitration under the FAA).

Under the FAA, "the general, congressionally mandated rule [is] that anti-arbitration decisions are immediately appealable under § 16(a)(1)." *May v. Higbee Co.,* 372 F.3d 757, 762 (5th Cir.2004). "[T]he question whether the parties have entered into a binding agreement to arbitrate is one of the inquiries we undertake in an interlocutory appeal of the denial of a motion to compel arbitration." *Id.* at 763. Accordingly, we will consider on appeal the enforceability of the Weekley Homes arbitration agreement. *See id.* at 763. We deny Rao's cross-point.

## III. ARBITRATION AGREEMENT

### A. Standard of Review

We apply an abuse of discretion standard of review respecting interlocutory appeals under section 51.016 of the Texas Civil Practice and Remedies Code. *Sidley Austin Brown & Wood LLP,* 327 S.W.3d at 862–63. Under this standard, "we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo." *In re Labatt Food Service, L.P.,* 279 S.W.3d 640, 643 (Tex.2009). "Whether an arbitration agreement is enforceable is subject to de novo review." *Id.*

### B. Applicable Law

"[T]he party asserting a change to an at-will employment contract must prove two things: (1) notice of the change, and (2) acceptance of the change." *In re Halliburton Co.,* 80 S.W.3d 566, 568 (Tex. 2002) (citing *Hathaway v. General Mills, Inc.,* 711 S.W.2d 227, 229 (Tex.1986)). Consequently, "[a]n employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employer establishes that the employee received notice of its arbitration policy and accepted it." *In re Dillard Dep't Stores, Inc.,* 198 S.W.3d 778, 780 (Tex. 2006) (per curiam) (orig.proceeding) (citing *Halliburton,* 80 S.W.3d at 568). Notice of an agreement to arbitrate can be effectively conveyed to an employee by a document that only summarizes a Dispute Resolution Program, it is not necessary that the employee receive the complete policy. *See In re Dallas Peterbilt Ltd., L.L.P.,* 196 S.W.3d 161, 162 (Tex.2006) (per curiam) (orig.proceeding). Furthermore, by continuing to work for an employer after receiving the notice, or past the effective date of the arbitration policy if one is provided, an employee accepts the agree-

ment to arbitrate as a matter of law. *See Halliburton,* 80 S.W.3d at 569 (employee continued working past the effective date stated in the notice); *Dallas Peterbilt,* 196 S.W.3d at. 162–63 (employee continued working after receiving notice); *Dillard Dep't Stores,* 198 S.W.3d at 780–81 (employee received, but did not sign, a summary of an arbitration policy and continued working past the its effective date).

■ A party attempting to compel arbitration under the FAA must "(1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement." *J.B.Hunt Transport, Inc. v. Hartman,* 307 S.W.3d 804, 809 (Tex.App.-San Antonio 2010, no pet.) (citing *In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 607 (Tex. 2005) (per curiam) (orig.proceeding)). Although the Texas Supreme Court has "repeatedly expressed a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003). The United States Supreme Court "has repeatedly emphasized that arbitration 'is a matter of consent, not coercion,' that the [FAA] 'does not require parties to arbitrate when they have not agreed to do so,' and its purpose is to make arbitration agreements 'as enforceable as other contracts, but not more so.' " *Roe v. Ladymon,* 318 S.W.3d 502, 510 (Tex.App.-Dallas 2010, no pet.) (citing *In re Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185, 192 (Tex. 2007)).

■ "Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate." *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 738 (Tex.2005) (orig.proceeding). Documents incorporated by reference in a contract, become part

of that contract. *In re Bank One,* 216 S.W.3d 825, 826 (Tex.2007) (per curiam) (orig.proceeding). Furthermore, "[l]ike other contracts, arbitration agreements must be supported by consideration." *D.R. Horton, Inc. v. Brooks,* 207 S.W.3d 862, 867 (Tex.App.-Houston [14th] 2006, no pet.). "Mutual promises to submit employment disputes to arbitration constitute sufficient consideration to support an arbitration agreement; however, if the employer can avoid its promise to arbitrate, the agreement is illusory." *Id.* at 868. "When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract." *In re 24R, Inc.,* 324 S.W.3d 564, 567 (Tex.2010) (per curiam).

■ If an employer can unilaterally modify or terminate the purported agreement, without prior notice to an employee, that agreement is based upon an illusory promise and thus not enforceable. *See In re C & H News Co.,* 133 S.W.3d 642, 647 (Tex.App.-Corpus Christi 2003, no pet.) (purported agreement was unenforceable because employer "retain[ed] the ability to pick and choose the claims it[ ] want[ed] to arbitrate"); *Tenet Healthcare Ltd. v. Cooper,* 960 S.W.2d 386, 388, 389 (Tex.App.-Houston [14th] 1998, writ dism'd w.o.j.) (agreement was unenforceable because employer reserved the right to rescind or amend it " 'as it deemed appropriate' within its sole discretion"). However, a clause providing for the modification or termination of the arbitration agreement that requires an employer to give notice prior to when the modification or termination becomes effective does not, by itself, make an agreement illusory. *See Halliburton,* 80 S.W.3d at 569–70 (because the employer was required to give notice before a modification or termination of an arbitration agreement became effective, the employer could not "avoid its promise to arbitrate by

amending the provision or terminating it altogether").

 An illusory promise in one document does not necessarily render a second, separate arbitration agreement unenforceable. *See In re Polymerica, LLC,* 296 S.W.3d 74, 75–76 (Tex.2009) (per curiam) (employee handbook that could be modified at any time, did not render an entirely separate arbitration agreement unenforceable); *In re 24R, Inc.,* 324 S.W.3d at 567–68 (employer's right to unilaterally change personnel policies as stated in an employee manual, did not extend to an arbitration agreement that was a separate, stand alone contract). However, if an employee handbook containing the right to change policies without prior notice is incorporated by reference into an arbitration agreement, the promise to arbitrate is illusory and unenforceable. *See 24R,* 324 S.W.3d at 567–68 (citing *In re C & H News Co.,* 133 S.W.3d 642, 646 (Tex. App.-Corpus Christi 2003, no pet.)).[2]

## C. Application of Law to Facts

 The Weekley Parties contend the Dispute Resolution Policy requiring arbitration is enforceable against Rao because Rao received notice of it "via the Handbook." They argue "Rao accepted the terms of the [Dispute Resolution Policy] by acknowledging its receipt and agreeing to abide by its terms." The record shows Rao was provided the Handbook by electronic transmission that included a summary of the Dispute Resolution Policy at Weekley Homes under the heading "DISPUTE RESOLUTION," and the four-page Dispute Resolution Policy that was connected to the Handbook by a hyperlink. Rao admits he received the Handbook, but argues the promise to arbitrate is illusory and thus unenforceable because of the language in the Handbook which states "[p]olicies are not to be interpreted as a promise by the Company that any particular situation will be handled in the express manner set forth in the text."

The Weekley Parties reply to Rao's argument contending the promise to arbitrate is not illusory because the right to modify policies, as contained in the Handbook, does not apply to the "separate," "fully valid and enforceable" Dispute Resolution Policy and that document contains no modification language. The Weekley Parties further contend that even if the modification language in the Handbook does apply to the Dispute Resolution Policy, the promise to arbitrate is not illusory because the Handbook states that employees will receive notification of any changes.

We cannot agree with the contention of the Weekley Parties that the modification language in the Handbook does not apply to the Dispute Resolution Policy. The very structure and language of the Handbook connects the modification language directly with the Dispute Resolution Policy. First, we note the modification language is set out in a section of the Handbook entitled "PURPOSE OF THIS HANDBOOK." That section makes broad reference to "policies." Second, we note the Handbook's table of contents includes a category of provisions titled *"DWH POLICIES SECTION."* The listed provisions under that title include "DISPUTE RESOLUTION." In the body of the Handbook, the section titled "DISPUTE

---

**2.** In *C & H News,* the employee signed a one-page "Mutual Agreement to Arbitrate" that incorporated an employee handbook by reference. The employee handbook stated all claims would be submitted to "binding arbitration as provided in the Handbook." However, the introductory section of the handbook, provided "that the content therein 'may, and likely will, be changed, modified, deleted or amended from time to time as the [employer] deems appropriate, with or without prior notification to employees.' "

RESOLUTION" describes "The David Weekley Homes Dispute Resolution Policy [as being] designed to maintain a healthy work environment, encourage communication between Team Members, and resolve problems in an efficient manner." Then, below the title "DISPUTE RESOLUTION" is another section titled "MEDIATION AND ARBITRATION." Following that titled paragraph, are three paragraphs of text. The first two describe arbitration and mediation. The third paragraph, set out in bold text, contains the following:

ANY CLAIM, CONTROVERSY OR OTHER DISPUTE RELATING TO YOUR EMPLOYMENT, SEPARATION FROM THE COMPANY, OR FOLLOWING SEPARATION FROM THE COMPANY, SHALL BE RESOLVED BY ARBITRATION, IN LIEU OF JURY TRIAL OR ANY OTHER LEGAL PROCEEDING, PURSUANT TO THE FEDERAL ARBITRATION ACT (TITLE 9, UNITED STATES CODE), AND IN ACCORDANCE WITH THIS DISPUTE RESOLUTION POLICY.

Following that statement is a link to the four-page Dispute Resolution Policy. One is invited to "Click *HERE* " to review the "complete," four-page Dispute Resolution Policy. Contrary to the Weekley Parties' position, the Dispute Resolution Policy is incorporated by reference into the Handbook and an integral part of it. *See In re Bank One,* 216 S.W.3d 825, 826 (Tex. 2007) (per curiam) (orig.proceeding) ("Documents incorporated by reference ... are part of the contract."). Further, the Dispute Resolution Policy is repeatedly referred to as a "policy." The broad modification language makes no distinction between company policies. That language applies to the Dispute Resolution Policy just as it applies to the other policies in the Handbook.

Additionally, we cannot agree with the Weekley Parties' contention that even if the modification language does apply to the four-page Dispute Resolution Policy, the promise to arbitrate is not illusory because the Handbook states that employees will receive notification of any changes. While there is no question that the Handbook states employees will be notified if the Handbook's policies are modified, it does not state that any modifications will only apply prospectively. *See Halliburton,* 80 S.W.3d at 569–70. The plain language of the modification provision gives Weekley Homes the unilateral power, at any time, to elect not to enforce any policy or provision in the Handbook. *See C & H News,* 133 S.W.3d at 647. By virtue of the modification language, Weekley Homes has "expressly denied that [it] was bound by the policies set out in that document." *Tenet Healthcare,* 960 S.W.2d at 389. "When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and therefore no contract." *24R,* 324 S.W.3d at 567; *see also Vanegas v. Am. Energy Servs.,* 302 S.W.3d 299, 301–02 (Tex.2009); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 849 (Tex.2009).

We conclude Weekley Homes' promise to arbitrate was illusory. Accordingly, the Dispute Resolution Policy, incorporated by reference in the Handbook, is not an enforceable agreement to arbitrate.

## IV. CONCLUSION

We conclude the trial court did not err in denying the Weekley Parties' plea in abatement and motion to compel arbitration. The purported arbitration agreement in this case is unenforceable. We AFFIRM the trial court's order denying appellants' Plea in Abatement and Motion to Compel Arbitration. We LIFT our pre-

vious stay of *American Arbitration Association Case No. 71 460 00493 10 Weekley Homes, L.P. v. Len Rao* and we DENY appellants' motion to declare pleading void, to find appellee in contempt, and for sanctions.