# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 25, 2012

No. 10-20845

Lyle W. Cayce
Clerk

JOHN CAREY, Individually and On Behalf of Other Employees Similarly Situated,

Plaintiff–Appellee

v.

24 HOUR FITNESS, USA, INCORPORATED,

Defendant–Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, PRADO, and ELROD, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Appellant 24 Hour Fitness, USA, Inc. appeals the district court's denial of its motion to stay proceedings and compel arbitration of Appellee John Carey's claim. The district court held that the binding arbitration provision relied upon by 24 Hour Fitness is illusory because 24 Hour Fitness "retain[ed] the unilateral right to modify or terminate the arbitration provision" at any time. For the reasons stated below, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Carey is a former sales representative for 24 Hour Fitness. In January 2005, during Carey's period of employment, 24 Hour Fitness issued an employee

No. 10-20845

handbook (the "Handbook"). One of the sections in the Handbook, entitled "Arbitration of Disputes," provided that all employment-related disputes, whether initiated by an employee or by 24 Hour Fitness, would be "resolved only by an arbitrator through final and binding arbitration." It specified that disputes under the Fair Labor Standards Act ("FLSA") were among those subject to the mandatory arbitration policy and provided that disputes cannot be brought as class actions or in representative capacities. The policy also expressly invoked the Federal Arbitration Act ("FAA") as its governing authority.

Carey signed the Employee Handbook Receipt Acknowledgment (the "Acknowledgment"), indicating that he had received the Handbook. The Acknowledgment reiterated the arbitration policy: "I agree that if there is a dispute arising out of my employment as described in the 'Arbitration of Disputes' policy, I will submit it exclusively to binding and final arbitration according to its terms." The Acknowledgment also stated that the terms of the Handbook are subject to change ("Change-in-Terms Clause"):

> I acknowledge that, except for the at-will employment, 24 Hour Fitness has the right to revise, delete, and add to the employee handbook. Any such revisions to the handbook will be communicated through official written notices approved by the President and CEO of 24 Hour Fitness or their specified designee. No oral statements can change the provisions of the employee handbook.

After Carey's employment ended, he filed this class action against 24 Hour Fitness, alleging that it had violated the FLSA by failing to adequately compensate him and other similarly-situated employees for overtime work. 24 Hour Fitness moved the district court to stay its proceedings and to compel arbitration of Carey's claim. In his response to that motion, Carey argued that the arbitration agreement was illusory because 24 Hour Fitness retained the

2

No. 10-20845

right to unilaterally amend the agreement.[1]  The district court agreed with Carey, holding that the arbitration agreement was illusory.  It therefore denied 24 Hour Fitness's motion to stay and compel arbitration.  24 Hour Fitness timely filed this appeal.

## II.  JURISDICTION AND STANDARD OF REVIEW

Carey brought a complaint under the FLSA, so the district court had jurisdiction under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.  This court has appellate jurisdiction under the FAA, specifically 9 U.S.C. § 16(a)(1)(A) and (B), which allows litigants to bring an interlocutory appeal of an order refusing a stay or denying a petition to compel arbitration.

This court reviews the grant or denial of a motion to compel arbitration de novo.  *Morrison v. Amway Corp.*, 517 F.3d 248, 253 (5th Cir. 2008).

## III.  DISCUSSION

In ruling upon a motion to compel arbitration, the court first determines whether the parties agreed to arbitrate the particular type of dispute at issue. *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). Answering this question requires considering two issues: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Id.* (internal quotation marks omitted).  Carey does not argue that his FLSA claim falls outside the scope of the arbitration agreement.  Rather, he challenges the first issue, claiming that the agreement to arbitrate is illusory and invalid.

The FAA reflects a "'liberal federal policy favoring arbitration.'" *CompuCredit Corp. v. Greenwood*, —S. Ct.—, No. 10-948, 2012 WL 43514, at *3 (Jan. 10, 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  However, the "federal policy favoring arbitration does not

---

[1] Carey also argued below that the arbitration agreement violated the Dodd-Frank Act of 2010, an argument he has abandoned on appeal.

apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Morrison*, 517 F.3d at 254 (internal quotation marks omitted). Given the "fundamental principle that arbitration is a matter of contract," *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks omitted), to determine whether an agreement to arbitrate is valid, courts apply "ordinary state-law principles that govern the formation of contracts." *Morrison*, 517 F.3d at 254 (internal quotation marks omitted). Both parties agree that Texas law applies.

Under Texas law, an arbitration clause is illusory if one party can "avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010). Put differently, where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party can suddenly change the terms of the agreement to avoid arbitration, then the agreement was illusory from the outset. The crux of this issue is whether 24 Hour Fitness has the power to make changes to its arbitration policy that have retroactive effect, meaning changes to the policy that would strip the right of arbitration from an employee who has already attempted to invoke it. *See Torres v. S.G.E. Mgmt., LLC*, 397 F. App'x 63, 68 (5th Cir. 2010) (unpublished) (summarizing several Texas and Fifth Circuit cases as "suggest[ing] that the lack of a notice window before any elimination of the [arbitration] clause becomes effective *and the ability to amend the agreement retroactively so as to avoid any promise to arbitrate* are factors indicating that the agreement may be illusory" (emphasis added)).

Our decision in *Morrison v. Amway Corp.* is instructive. In that case, applying Texas law, we refused to enforce an arbitration agreement that was capable of being retroactively modified. 517 F.3d at 257. *Morrison* involved a dispute arising out of a distributorship agreement. *Id.* at 250–51. The distributorship agreement required all distributors to comply with certain "Rules

of Conduct" as they were "amended and published from time to time in official Amway literature." *Id.* at 253 (internal quotation marks omitted). Contained within the Rules of Conduct was an arbitration provision. *Id.* at 257. We concluded that there was "nothing in any of the relevant documents which preclude[d] . . . eliminating the entire arbitration program or its applicability to certain claims or disputes so that . . . mandatory arbitration would no longer be available even as to disputes which had arisen and of which Amway had notice prior to publication [of the change]." *Id.* Because Amway was able to amend its policy and thus renege on its promise to arbitrate even in the context of disputes already underway, we held that its agreement to arbitrate was illusory. *Id.*

In reaching this conclusion, we distinguished the facts in *Morrison* from those in *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002). In that case, a Halliburton employee argued that a mandatory arbitration provision was illusory because Halliburton had retained the right to modify or discontinue the program. *Id.* at 569. In holding that the arbitration agreement was not illusory, the Texas Supreme Court focused on two key provisions: one stated that "no amendment shall apply to a Dispute of which the Sponsor [Halliburton] had actual notice on the date of amendment"; the other stated that any termination of the arbitration program "shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." *Id.* at 569–70 (internal quotation marks omitted). Because of these provisions, the court held that "Halliburton cannot avoid its promise to arbitrate by amending or terminating it altogether." *Id.* at 570. It was the absence of such a "*Halliburton* type savings clause[]" that caused the *Morrison* court to hold that the arbitration provision at issue was illusory. 517 F.3d at 257; *see also In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 421, 424 (Tex. 2010) (holding that an arbitration clause in a workers' compensation plan was not illusory where, although the employer reserved the right to "amend,

modify, or terminate the Plan at any time," it also provided that "no such amendment or termination will alter the arbitration provisions . . . with respect to . . . an Injury occurring prior to the date of such amendment or termination").

Carey argues that the arbitration clause in the Handbook is illusory because the Change-in-Terms Clause would allow 24 Hour Fitness to unilaterally avoid its promise to arbitrate by modifying the Handbook. The Acknowledgment gives 24 Hour Fitness the "right to revise, delete, and add to the employee handbook" in which the arbitration provision is located. As in *Morrison*, there is no "*Halliburton* type savings clause" in the Acknowledgment that limits 24 Hour Fitness's ability to make retroactive modifications to the arbitration provision. If a 24 Hour Fitness employee sought to invoke arbitration with the company pursuant to the agreement, nothing would prevent 24 Hour Fitness from changing the agreement and making those changes applicable to that pending dispute if it determined that arbitration was no longer in its interest. In effect, the agreement allows 24 Hour Fitness to hold its employees to the promise to arbitrate while reserving its own escape hatch.

24 Hour Fitness argues that its Acknowledgment should not be read to allow retroactive changes in its arbitration policy when it does not expressly provide for retroactivity. This argument ignores this court's holdings in *Torres*, 397 F. App'x at 68, and *Morrison*, 517 F.3d at 257, in which silence about the possible retroactive application of amendments to the arbitration policy was interpreted to allow amendments to apply retroactively.

24 Hour Fitness also argues that the Change-in-Terms Clause does not allow it to unilaterally modify the Handbook. Because the Change-in-Terms Clause contains a provision relating to notice ("Any . . . revisions to the handbook will be communicated through official written notices approved by the President and CEO of 24 Hour Fitness . . ."), 24 Hour Fitness argues that any change would not become binding upon Carey until he (1) received notice of that

change and (2) accepted the change by continuing his employment. It concludes that it therefore lacks the power to unilaterally modify the arbitration clause without obtaining Carey's assent.

Although 24 Hour Fitness is correct that it is necessary for an employer seeking to change the terms of an employment contract to prove notice and acceptance of those changes, it does not follow that these two steps are sufficient to make a contract non-illusory. *Halliburton* makes this clear. In that case, the court discussed the proposition that an employer must give notice and obtain its employees' acceptance of any changes to the terms of employment. 80 S.W.3d at 568. It also held that Halliburton had satisfied these requirements and that the plaintiff had accepted its imposition of a dispute resolution program as a matter of law. *Id.* at 569. If notice and acceptance were all that were required to make an arbitration agreement non-illusory, the court could have answered the question of illusoriness at once upon finding that Halliburton had satisfied those requirements. Instead, later in the opinion, the court embarked upon a completely separate discussion of whether the arbitration agreement was illusory. *Id.* at 569–70. Nowhere in that discussion did the court suggest that its earlier holding—that notice and acceptance of the change had occurred—was sufficient to answer that question, or even that it factored into the inquiry at all. *Id.* Instead, the court's analysis of whether the agreement was illusory dealt exclusively with the savings clause preventing any changes from having retroactive effect. *Id.* 24 Hour Fitness has not argued that the notice and acceptance requirements would prevent it from retroactively eliminating its arbitration policy, which is the critical inquiry for determining whether an agreement is illusory.

24 Hour Fitness cites several cases in support of its argument that an arbitration agreement is not illusory so long as the party reserving the right to change its terms must provide notice of any changes. *See, e.g.*, *Zamora v. Swift*

*Transp. Corp.*, 319 F. App'x 333, 334 (5th Cir. 2009) (unpublished) (affirming in a one-page opinion the district court's holding that an arbitration agreement was illusory because the employer "reserved the right to revoke or modify the agreements at any time without notice"); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229–31 (Tex. 2003) (suggesting that if an employer's reservation of the right to unilaterally modify any personnel policy without notice applied to its arbitration agreement that the agreement would be rendered illusory). However, both *Torres* and *Morrison* hold that notice is insufficient when retroactive amendment is possible.  In *Torres*, we considered an arbitration provision to which amendments would become binding "upon notice" "or by publication."  397 F. App'x at 66.  Despite the fact that notice was being provided, we held that because amendments became effective immediately and because there was no savings clause excepting pending disputes from amendment, the agreement was illusory.  *Id.* at 68.  Similarly, in *Morrison*, amendments to the arbitration provision were to be "published . . . in official Amway literature."  517 F.3d at 254.  Despite this provision for notifying its distributors of changes to the arbitration agreement, we still held that the agreement was illusory: "While it is inferable that an amendment thus unilaterally made by Amway to the arbitration provision would not become effective until published, there is nothing to suggest that once published the amendment would be inapplicable to disputes arising, or arising out of events occurring, *before* such publication."  *Id.*

Our conclusion that notice and acceptance are not sufficient to render an arbitration provision non-illusory is bolstered by *Weekley Homes, LP v. Rao*, 336 S.W.3d 413 (Tex. App.—Dallas 2011, pet. denied).  In that case, an employer sought to compel arbitration of an employee's lawsuit based upon an arbitration provision contained within the employee handbook.  *Id.* at 415.  The employee argued that the arbitration provision was illusory because the handbook stated

that the policies contained therein were "not to be interpreted as a promise by the Company that any particular situation will be handled in the express manner set forth in the text." *Id.* (internal quotation marks omitted). The court noted the proposition that a "party asserting a change to an at-will employment contract must prove two things: (1) notice of the change, and (2) acceptance of the change." *Id.* at 418 (internal quotation marks omitted). The court also stated that "by continuing to work for an employer after receiving the notice, or past the effective date of the arbitration policy if one is provided, an employee accepts the agreement to arbitrate as a matter of law." *Id.* at 418–19. In addition, the employee conceded that he had received the handbook and an email "confirm[ing] that [he] underst[oo]d and agree[d] to abide by the policies and procedures" contained in the handbook. *Id.* at 417. Despite the evidence of notice and acceptance, the court nevertheless held that the agreement to arbitrate was illusory. *Id.* at 421. The court stated:

> [W]e cannot agree with the Weekley Parties' contention that . . . the promise to arbitrate is not illusory because the Handbook states that employees will receive notification of any changes. While there is no question that the Handbook states employees will be notified if the Handbook's policies are modified, it does not state that any modifications will only apply prospectively. The plain language of the modification provision gives Weekley Homes the unilateral power, at any time, to elect not to enforce any policy or provision in the Handbook.

*Id.* (internal citations omitted).

No. 10-20845

We find the reasoning in *Weekley Homes* compelling,[2] and confirmed by our interpretation of *Halliburton*, a case cited favorably by virtually all of the courts addressing the issue of whether arbitration agreements are illusory.[3] *Halliburton* held that the arbitration agreement at issue was not illusory because Halliburton could not "avoid its promise to arbitrate by amending the provision or terminating it altogether."   80 S.W.3d at 570.   Thus, the fundamental concern driving this line of case law is the unfairness of a situation where two parties enter into an agreement that ostensibly binds them both, but where one party can escape its obligations under the agreement by modifying it. Requiring notice alone does not fully address this concern: if an employer provided for 10-day notice of any change to its arbitration provision, this could still arguably allow it to avoid its promise to arbitrate as to claims that were already in progress, unless there were some provision preventing changes from applying to in-progress disputes.   This concern is heightened under the facts

---

[2] The cases relied upon by 24 Hour Fitness do not persuade us.  24 Hour Fitness argues that *In re Dillard Department Stores, Inc.*, 198 S.W.3d 778 (Tex. 2006), establishes that an employer has no power to unilaterally modify the terms of employment, since the employee must be notified of and accept any modifications for them to be effective.  However, the critical distinction between *Dillard* and this case is that there was no express reservation of Dillard's right to amend the arbitration agreement.  *Id.* at 781; *see also Morrison*, 517 F.3d at 256 n.10 (rejecting a similar argument concerning *Dillard*).  *Dillard* is therefore inapposite.  The same can be said for *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862 (Tex. App.—Houston [14th Dist.] 2006, no pet.), relied upon by 24 Hour Fitness for the proposition that notice is all that is required to keep an arbitration agreement from being illusory.  *See id.* at 869.  *D.R. Horton* is distinguishable because there the court found that the arbitration agreement was not subject to the change-in-terms provision.  *Id.* at 868–69.  The language relied upon by 24 Hour Fitness is dicta, *id.* at 869, that we decline to follow here.  Finally, 24 Hour Fitness cites to *Iberia Credit Bureau Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cir. 2004).  State contract law governs whether an arbitration agreement is valid, *Morrison*, 517 F.3d at 254, and in *Iberia* this court was applying Louisiana law.  379 F.3d at 172.  While notice may be sufficient under Louisiana law, *id.* at 173–74, this court has concluded that it is not sufficient under Texas law in *Torres* and *Morrison*.

[3] *See, e.g., Torres*, 397 F. App'x at 66; *Morrison*, 517 F.3d at 254–55; *Odyssey Healthcare*, 310 S.W.3d at 424; *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 782 (Tex. 2006); *J.M. Davidson*, 128 S.W.3d at 228; *Weekley Homes*, 336 S.W.3d at 418–21; *D.R. Horton*, 207 S.W.3d at 869.

presented here, because 24 Hour Fitness does not provide a definite notice window. Indeed, it appears that amendments could become binding almost instantaneously upon "official written notice."[4]

## IV. CONCLUSION

For the foregoing reasons, we hold that the arbitration agreement contained in the 24 Hour Fitness employee handbook was illusory. Therefore, Carey is not bound by the provision and 24 Hour Fitness cannot compel arbitration to go forward. The judgment of the district court is AFFIRMED.

---

[4] 24 Hour Fitness argues that both *Torres* and *Morrison* are distinguishable because they provided for amendments that would be automatically binding upon notice. 24 Hour Fitness argues that its amendments would not be automatically binding, because employees have the opportunity to accept the changes by continuing to work, or rejecting the changes by quitting. We do not find this distinction meaningful. Although 24 Hour Fitness's Acknowledgment does not use the phrase "automatically binding," neither does it provide a quantifiable notice window before amendments take effect. *Cf. Halliburton*, 80 S.W.3d at 569–70 (providing a 10-day notice window in addition to a savings clause); *Odyssey*, 310 S.W.3d at 424 (providing a 14-day window and a savings clause); *In re AdvancePCS Health LP*, 172 S.W.3d 603, 605 (Tex. 2005) (providing a 30-day window and a savings clause). Absent a notice window, 24 Hour Fitness certainly seems to have the power to make its amendments binding upon notice. In addition, as Carey points out, "[t]here is no language in the agreement or related documents suggesting that, if Mr. Carey did quit in response to a notice of amendment, he could avoid application of the amendments to disputes arising before notice of the amendment," which as discussed above is the critical issue.