# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60369

United States Court of Appeals
Fifth Circuit

**FILED**

February 7, 2019

Lyle W. Cayce
Clerk

DR. MARY BEGOLE,

      Plaintiff - Appellant

v.

NORTH MISSISSIPPI MEDICAL CENTER, INCORPORATED; NORTH MISSISSIPPI HEALTH SERVICES, INCORPORATED; TUPELO EMERGENCY CARE ASSOCIATES, L.L.C.; DR. JOSEPH JOHNSEY,

      Defendants - Appellees

---

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:17-CV-33

---

Before CLEMENT, OWEN, and HO, Circuit Judges.

PER CURIAM:[*]

Doctor Mary Begole tried to litigate her employment dispute in federal court. The district court held that her claims are subject to arbitration. We agree and consequently affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60369

**FACTS AND PROCEEDINGS**

On June 10, 2014, Begole signed an employment agreement ("EA") to work as a physician in the emergency department of North Mississippi Medical Center ("NMMC"). The EA includes a clause providing for the arbitration of "all disputes . . . arising out of or relating to this [EA]."

Following a reorganization, NMMC resolved to use Tupelo Emergency Care Associates, LLC ("TECA") to contract with emergency physicians. Each of the emergency physicians who had been employed by NMMC were offered an independent contractor agreement ("ICA"). On February 12, 2015, Begole signed such an agreement. The ICA includes a clause providing for the arbitration of "[d]isputes arising under this [ICA]."

Following the termination of her service with NMMC, Begole filed suit against NMMC, TECA, and several affiliates (including her supervisor, Doctor Johnsey). She asserted claims under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA) as well as several state law claims including wrongful termination, intentional interference with contract, intentional interference with business relations, and fraud. The defendants filed a motion to compel arbitration, which the district court granted.

Begole asserts that arbitration is improper. She contends that any arbitration requirement is unconscionable, that further discovery was required, that her wrongful termination tort claim is not subject to arbitration, and that arbitration of her claims against her supervisor, Doctor Johnsey, cannot be compelled, under the doctrine of equitable estoppel, because he was not a signatory to the EA or ICA.

No. 18-60369

## STANDARD OF REVIEW

"This court reviews the grant or denial of a motion to compel arbitration de novo." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). "[W]hether to utilize equitable estoppel [to compel arbitration] is within the district court's discretion; we review to determine only whether it has been abused." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000). "[I]n reviewing cases decided under Rule 12(b)(3), this court must view all the facts in a light most favorable to the plaintiff." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) (internal quotation marks omitted).

## DISCUSSION

### I.     Unconscionability

"[I]n order to determine whether legal constraints exist which would preclude arbitration, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 713–14 (Miss. 2002) (quoting *Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819, 827 (S.D. Miss. 2001) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 (5th Cir. 1996)).

Mississippi recognizes that "[u]nconscionability can be procedural or substantive." *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock,* 14 So. 3d 695, 699 (Miss. 2009). "Under substantive unconscionability, we look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, the contracting parties." *Id.* (internal quotation marks omitted). "Procedural unconscionability may be proved by showing a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the

3

contract and inquire about the contract terms." *E. Ford, Inc.*, 826 So. 2d at 714 (internal quotation marks omitted).

Begole argues that both the ICA and EA agreements are procedurally unconscionable, and that the EA is substantively unconscionable.

*A.    Procedural Unconscionability*

With respect to the ICA, Begole argues that she did not have time to study it because the document was presented to her after its effective date, while she was treating critically ill patients, and because she worried that she did not have medical malpractice insurance until it was consummated.

The defendants respond by correctly pointing out that, generally, allegations of unconscionability, related to the formation of the contract as a whole, are for the arbitrator. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). Begole's broad attacks on the nature of the presentation of the contract are subject to this rule and the district court was correct to conclude that they must be arbitrated.

However, Begole rightly points out that where a party challenges the validity of the agreement to arbitrate in particular, the district court must weigh in on whether the specific decision to agree to arbitrate was unconscionable. *See id*; *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71, (2010). Begole identifies several instances at the district court where she claimed that the decision to agree to arbitrate was unconscionable—because the term sheet she received before being presented with the ICA did not include the arbitration provision.

Begole is correct that these allegations must be reviewed by the district court. But the district court did review them and correctly concluded that they were without merit.

> Under Mississippi law . . . parties to a contract have an inherent
> duty to read the terms of the contract prior to signing; that is, a

4

party may neither neglect to become familiar with the terms and condition and then later complain of lack of knowledge, nor avoid a written contract merely because he or she failed to read it or have someone else read and explain it.

*MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 177 (Miss. 2006).

Begole has not alleged that the defendants rushed her or gave her unreasonable deadlines within which to sign the ICA. Because she has simply claimed that the inconsistency between the term sheet and the ICA made the agreement to arbitrate unconscionable—an issue that would have been remedied by simply reading the contract—this claim must fail.[1]

Begole further alleges that the EA is procedurally unconscionable because it contained misrepresentations and omissions about NMMC's commitment to patient care, compliance with applicable laws, and safeguards against sexual harassment. But these are the same kinds of issues that apply to the agreement as a whole, and not to the specific decision to arbitrate. *See Prima Paint*, 388 U.S. at 403–04. For this reason, any dispute about the unconscionability of the EA was correctly referred to the arbitrator.

B.    *Substantive Unconscionability*

The district court and each of the parties appear to concede that the punitive damages waiver in the EA may have been substantively unconscionable. But the district court held that any such unconscionability would not render the agreement to arbitrate unconscionable because for an agreement to be entirely unenforceable it must usually include numerous unconscionable terms.

---

[1] Begole argues, in the alternative, that she was at least entitled to discovery on this issue. But this argument is unavailing because our holding does not depend on the resolution of any factual dispute and takes as a given Begole's characterization of the formation of the contract.

5

Begole cites *Covenant Health & Rehabilitation of Picayune, LP v. Estate of Moulds ex rel. Braddock* for the proposition that because the defendants have attempted enforce the unconscionable punitive damages waiver, they cannot now compel arbitration. But *Moulds* says no such thing. *See* 14 So. 3d 695, 703 (Miss. 2009).

Instead, Mississippi law indicates that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable . . . the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Miss. Code § 75–2–302.

In *Moulds* the Mississippi Supreme Court held that where an agreement contains a "multitude" or "plethora" of unconscionable terms, the entire agreement can become unenforceable. 14 So. 3d at 702, 703. Begole has not shown that the offending punitive damages provision undermines the agreement as a whole. Consequently, consistent with the Mississippi statute, the district court correctly concluded that it could be severed, and the agreement to arbitrate disputes enforced.

## II.    Wrongful Termination

Begole next argues that her wrongful termination tort claim may not be referred to arbitration because, as an independent tort claim, it does not "arise" "out of" or "under" either of the agreements. But the cases to which Begole cites do not create a blanket exemption of arbitration of tort claims under similar personal service agreements (employment or independent contractor). *See, e.g.*, *Keyes v. Dollar Gen. Corp.*, 240 So. 3d 373, 376–77 (Miss. 2018) (analyzing an

arbitration agreement that, unlike Begole's, listed out claims that would be considered "Covered Claims" and claims which were not "Covered Claims").

Indeed, we have held that similar language was "sufficiently broad to encompass" non-contractual employment-related claims. *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996). We agree with the district court's conclusion that Begole's wrongful termination claim is closely related to her employment and triggers either of the arbitration clauses. In other words, Begole's entire dispute is predicated on her contractual relationship with the defendants and so this dispute, by operation of logic, arises "out of" or "under" those contracts.

## III.   Equitable Estoppel

Begole argues that her tort claims against her supervisor, Doctor Johnsey, are not subject to arbitration because he is a non-signatory to the agreements providing for arbitration. The district court concluded that equitable principles allow this non-signatory, Doctor Johnsey, to compel a signatory, Begole, to arbitrate. Begole argues that this conclusion is inconsistent with Mississippi's skeptical view of equitable estoppel.

But "we do not lightly override" a district court's decision to compel arbitration under equitable estoppel because "the district court is better equipped to make the call than this court." *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir. 2002). The Mississippi Supreme Court has explained that "equitable estoppel will allow a nonsignatory to compel arbitration, when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 491 (Miss. 2005) (internal quotation marks omitted). The district court concluded that Begole's claims—which are centered around interference with her contractual, service

7

relationships with NMMC and TECA—"allege interdependent and concerted misconduct against all Defendants." We cannot conclude that such a characterization is an abuse of discretion.[2]

## CONCLUSION

For the foregoing reasons, Begole's claims are subject to arbitration—we AFFIRM.

---

[2] Begole argues, in the alternative, that she was at least entitled to discovery on this issue. But it is unclear what exactly Begole hopes to find that could help her. She claims to seek "any purported 'detrimental reliance' by Dr. Johnsey that would somehow allow him to rely on the arbitration clauses." But we see no reason to order discovery designed to turn up evidence of detrimental reliance which could only serve to strengthen the district court's decision rather than weaken it.