# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 7, 2019

No. 18-50872

Lyle W. Cayce
Clerk

ESTELLA LYNN TRAMMELL, Individually and On Behalf of All
Others Similarly Situated,

> Plaintiff - Appellant

v.

ACCENTCARE, INCORPORATED,

> Defendant – Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:17-CV-1129

Before HIGGINBOTHAM, JONES, and COSTA, Circuit Judges.

PER CURIAM:*

Estella Trammell, an at-will employee of AccentCare, challenges the district court's order that she must arbitrate a pay dispute with the company. The district court applied the "mailbox rule" to presume that Trammell received the company's proffered arbitration agreement even though she testified that she never received the contract and indicated to her employer that she was experiencing difficulties in receiving and sending mail. Because Trammell overcame this presumption by introducing competing evidence, she

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50872

has created a genuine issue of material fact regarding whether an arbitration agreement was formed. The order must be reversed and remanded for trial. Federal Arbitration Act, 9 U.S.C. Section 4 ("FAA").

## BACKGROUND

The facts underlying this case are straightforward. AccentCare is a home healthcare provider. Ms. Trammell is an at-will employee providing in-home personal care assistance services for AccentCare's patients. Trammell alleges that AccentCare violated the FLSA in miscalculating her pay, but this appeal does not concern the merits of her claim. Following the district court's order compelling arbitration, the issue on appeal is whether Trammell and AccentCare entered into a contract compelling arbitration of disputes.

In 2016, AccentCare mailed its Arbitration Agreement to Trammell's home address of over twenty years, the same address to which AccentCare mailed all of her employment-related documents. But Trammell attested that she never received the Arbitration Agreement, had no knowledge of it prior to being presented with it in this lawsuit, did not agree to it, and did not sign it. Additionally, Trammell attested that she notified AccentCare that she was having difficulty both receiving and sending mail to and from her address through the U.S. Postal Service. Trammell also attested that, starting in late 2015, before the mailing of the Arbitration Agreement, she told at least three different AccentCare management employees that (1) she had not received a stack of blank timesheets mailed to her home address to be filled out to record her work hours; and (2) she had mailed in a completed timesheet but AccentCare had not received it. Despite the fact that AccentCare's cover letter to Trammell requests that she countersign and return the arbitration agreement, AccentCare did not produce an arbitration agreement signed by her. Trammell thus requested a jury trial under the FAA on the issue of whether a valid contract to arbitrate was formed.

2

No. 18-50872

Trammell filed an FSLA suit in federal court on November 30, 2017. AccentCare answered and moved to dismiss, or in the alternative, to stay proceedings and compel arbitration (the "Motion"). Responding to the Motion, Trammell disputed the existence of any arbitration agreement. The parties offered evidence. The magistrate judge to whom the question had been referred issued a report and recommendation that the Motion be granted. The magistrate judge reasoned that because of the presumption underlying the "mailbox rule," AccentCare's evidence that an arbitration agreement was mailed to Trammell's residence was sufficient to establish an enforceable arbitration contract. The District Court adopted the Report in full, issued an order compelling arbitration, and dismissed Trammell's claim without prejudice. Trammell timely appealed.

## DISCUSSION

This Court reviews *de novo* a district court's ruling on a motion to compel arbitration. *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018) (citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)).

A two-step inquiry applies in determining whether the parties have agreed to arbitrate a dispute under the FAA: "The first is contract formation— whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Production Svcs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). This case involves only the first inquiry, and the issue turns on Texas contract law. *See Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012).

Trammell bears the "initial" burden here because she requested a jury trial on the formation issue. *See Gilliam v. Glob. Leak Detection U.S.A.*, Inc., 141 F. Supp. 2d 734, 737 (S.D. Tex. 2001) ("In an effort to limit meritless claims of invalidity, the Fifth Circuit has held that a party seeking to avoid arbitration

3

must bear the initial burden of production in order to create a fact issue on the validity of an arbitration clause."). But because AccentCare sought to compel arbitration based on an arbitration agreement promulgated during the course of an at-will employee's employment, it bears the burden to demonstrate a proper modification of Trammell's employment terms. *See Kubala v. Supreme Production Svcs., Inc.*, 830 F.3d 199, 203 (5th Cir. 2016).[1]

In order "[t]o demonstrate a modification of the terms of at-will employment, the proponent of the modification must demonstrate that the other party: (1) received notice of the change; and (2) accepted the change." *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002). Continued employment following notice that an arbitration policy would take effect is enough to satisfy both requirements. *Id.* at 569. "To prove notice, an employer asserting a modification must prove that he unequivocally notified the employee of definite changes in employment terms." *Hathaway v. Gen. Mills, Inc.*, 711 S.W. 2d 227, 229 (Tex. 1986) (citing *Stowers v. Harper*, 376 S.W.2d 34, 39 (Tex.Civ.App.— Tyler 1964, writ ref'd n.r.e.).

A district court must hold a trial on the existence of an arbitration agreement if "the making of the arbitration agreement . . . [is] in issue." 9 U.S.C. § 4. The question, then, is whether Trammell, through her sworn affidavit and other evidence of non-receipt, has put the existence of the agreement in issue. AccentCare chiefly relies on the law's presumption, per the mailbox rule, that Trammell actually received the Arbitration Agreement.

---

[1] Arbitration agreements between employers and their employees are broadly enforceable in Texas. *In re Poly–Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). But "[a]lthough [the Texas Supreme Court has] repeatedly expressed a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

In Texas,  the "mailbox rule" holds that "[a] letter properly addressed, stamped and mailed may be presumed to have been received by the addressee in the due course of the mail." *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983) (citing *Southland Life Insurance Co. v. Greenwade*, 159 S.W.2d 854 (Tex. 1942)).  But this presumption is rebuttable. *See Southland*, 159 S.W.2d at 857.

Whatever the precise amount of evidence required to rebut the mailbox rule's presumption of receipt, and hence, notice for the purpose of establishing an agreement to arbitrate, Trammell has satisfied it here.  Trammell has denied receipt in a sworn affidavit, stating further that she notified three AccentCare personnel about her problems sending and receiving mail at her home, including mail from AccentCare, and that she began driving her time slips to work since they were being lost in the mail.  Moreover, while there is no dispute that AccentCare mailed the proposed arbitration agreement to Trammell, the company admits that it cannot produce the signed agreement, which tends to corroborate that she did not sign the agreement.  Not that signature was legally required, but the absence of a signed document is not inconsistent with Trammell's claim of non-receipt.  Nor did AccentCare offer affidavits from its employees contradicting what Trammell allegedly told them. Trammell has not merely provided an unsubstantiated affidavit which "does not allege or explain any potential deficiency" in the mailing process. *See, e.g.*, *Cash v. AXA Equitable Life Ins.*, 229 F. Supp. 3d 542, 549–50 (W.D. Tex. 2017). Affidavits that "simply deny receipt . . . are insufficient to undermine the presumption of receipt." *Marsh v. First USA Bank*, 103 F. Supp. 2d 909, 917–19 (N.D. Tex. 2000); *see also Tinder v. Pinkerton Sec.,* 305 F.3d 728, 735-36 (7th Cir. 2002) (affidavit with plaintiff's bare denial of receipt of arbitration notice is insufficient to create genuine issue of material fact).  Trammell has produced here what other parties have not-–controvertible evidence, other than a bare

denial of receipt, that there was some irregularity in the mailing process. The district court thus erred in relying on the presumption of the mailbox rule without regard to the competing evidence Trammell provided to rebut that presumption. Because Trammell created a genuine issue of material fact regarding whether an arbitration agreement was formed, she is entitled to a jury trial under Section 4 of the FAA.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's order and **REMAND** for further proceedings consistent with this opinion.