

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TEMPORARY ALTERNATIVES, INC., | § | |
| d/b/a dmDICKASON PERSONNEL | | No. 08-13-00166-CV |
| SERVICES OF EL PASO, | § | |
| | | Appeal from the |
| Appellant, | § | |
| | | 205th Judicial District Court |
| v. | § | |
| | | of El Paso County, Texas |
| MISTI K. JAMROWSKI, | § | |
| | | (TC# 2013DCV0105) |
| Appellee. | § | |

## **O P I N I O N**

Appellant Temporary Alternatives, Inc., d/b/a dmDickason Personnel Services of El Paso ("dmDickason" or "Appellant"), seeks interlocutory review of the trial court's denial of its motion to stay proceedings and compel arbitration against a former employee who filed suit in district court. In two issues, Appellant contends that an arbitration agreement it entered into with Appellee Misti Jamrowski is not illusory because Appellant either lacks the power to alter the agreement, or alternatively, it possesses alteration powers subject to a valid *Halliburton*[1] "savings clause" that prevents it from unilaterally reneging on its promise to arbitrate disputes. Because we find that Appellant does possess the power to unilaterally avoid arbitration by amending the agreement without notice at any time before Jamrowski files an arbitration claim,

---

[1] *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002).

the agreement rested on an illusory promise and failed for lack of consideration, and therefore, the trial court did not err in denying arbitration. We affirm.

## BACKGROUND

Appellant is a temporary worker staffing company servicing client companies throughout the El Paso region. Jamrowski, through Appellant, served as a temporary worker for one of Appellant's client companies, who is not a party to this appeal. Although the temporary workers work on-site for Appellant's client companies, the workers are ultimately employees of dmDickason and are subject to Appellant's corporate policies and procedures. The dmDickason Employee Handbook ("Handbook") contains an acknowledgement page at the outset of the document stating that the employee acknowledges the Handbook does not cover all corporate policies in detail. The acknowledgment page also contains the following language: "I also understand that the provisions in the Handbook may be changed at any time by dmDickason and that in certain circumstances; dmDickason may choose not to follow the provisions in the Handbook."

Two copies of the Dispute Resolution and Arbitration Policy Agreement ("Agreement") are contained in the Handbook and listed in the Handbook's table of contents as attachments. One copy must be returned to dmDickason and one is for the employee's records. The Agreement requires employees to submit any disputes between them, dmDickason, or dmDickason's client companies "relating to or arising out of an employee's recruitment, hiring, employment, or . . . termination of employment[]" to binding arbitration. The Agreement contains the following provision:

> dmDickason may change or modify this arbitration policy from time to time without advance notice or the consent of employees. However, with respect to any claim for which a demand for arbitration has been filed with the AAA, dmDickason will not modify or change the agreement between

2

you and dmDickason to use final and binding arbitration to resolve employment-related disputes without notifying you and obtaining your agreement to such changes.

Jamrowski filed suit in district court and brought employment claims against Appellant and Appellant's client company. Appellant moved to compel arbitration, which the trial court denied. This appeal followed.

## DISCUSSION

In its two issues on appeal, Appellant maintains that the trial court erred in finding that the Agreement was illusory because the Agreement is a stand-alone document unaffected by a Handbook clause permitting revisions to Handbook components, and because a savings clause contained within the Agreement itself limits any residual revisionary powers Appellant may possess to comply with *Halliburton*. We disagree.

### Standard of Review and Applicable Law

The courts of appeals may exercise interlocutory jurisdiction over trial court orders pertaining to matters subject to the Federal Arbitration Act, 9 U.S.C.A. §§ 1–16 (West 2009). *See* TEX.CIV.PRAC.&REM.CODE ANN. § 51.016 (West Supp. 2013). "To compel arbitration under the FAA, a party must establish that there is a valid arbitration agreement and that the claims fall within the scope of the agreement." *Mendevil v. Zanios Foods, Inc.*, 357 S.W.3d 827, 830 (Tex.App.--El Paso 2012, no pet.). We review a trial court's FAA arbitration order on direct appeal for abuse of discretion. *Sun Fab Indus. Contracting, Inc. v. Lujan*, 361 S.W.3d 147, 150 (Tex.App.--El Paso 2011, no pet.). Before the trial court may compel arbitration, the party seeking arbitration must establish the existence of a valid and enforceable predicate contract not subject to any valid legal or equitable defenses. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227-28 (Tex. 2003)(arbitration agreement must exist and comport with traditional contract

3

principles).  A trial court abuses its discretion when it refuses to compel arbitration pursuant to a valid and enforceable arbitration agreement.  *Lujan*, 361 S.W.3d at 150.  We review questions of contract formation and construction *de novo*.  *Webster*, 128 S.W.3d at 227.

Consideration from each party is required before a binding contract forms.  *Texas Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 309 (Tex.App.--El Paso 2009, no pet.).  Arbitration agreements are no exception to this rule.  *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006).  "Mutual, reciprocal promises which bind both parties may constitute consideration for a contract."  *Mendevil*, 357 S.W.3d at 831.  However, "[a] promise which does not bind the promisor, as when the promisor retains the option to discontinue performance, is illusory."  *Id*. at 832.  "An agreement to arbitrate may be illusory if a party can unilaterally avoid the agreement to arbitrate."  *Id*.  Where the promisor retains the right to unilaterally alter or terminate arbitration agreement at its election, the agreement is illusory unless it contains a savings clause that adequately restrains the promisor's ability to avoid arbitration.  *In re Halliburton Co.*, 80 S.W.3d at 568-69.  The Texas Supreme Court has not explicitly defined the minimum requirements of an arbitration savings clause, and the parties here ask us to resolve a split in authorities as to when a savings clause is adequate under *Halliburton*.  *Compare In re Datamark, Inc.*, 296 S.W.3d 614, 618 (Tex.App.--El Paso 2009, orig. proceeding)(savings clause adequate where it provides employee with prior notice of planned changes), *with Weekley Homes, L.P., v. Rao*, 336 S.W.3d 413, 421 (Tex.App.--Dallas 2011, pet. denied); *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012); *and Peleg v. Neiman Marcus Group, Inc.*, 140 Cal.Rptr.3d 38, 63-4 (Cal.Dist.Ct.App. 2012)(savings clause only effective where it prohibits retroactive application of changes against known claims, even with prior notice).

"In determining whether a [savings clause] is sufficient under *Halliburton*, we must

decide whether the clause allows the employer[] to unilaterally alter or terminate the arbitration agreement and if so, whether that right renders the agreement to arbitrate illusory." *In re ReadyOne Industries, Inc.*, 400 S.W.3d 164, 170 (Tex.App.--El Paso 2013, orig. proceeding). We address these issues in turn.

### Stand-Alone Arbitration Agreement

In Issue One, Appellant urges us to find that the arbitration agreement is non-illusory because neither the Agreement nor the Handbook incorporated the other by reference, meaning that language allowing Appellant to change the contents of and policies contained in the Handbook at any time does not apply to the Agreement. We decline to reach this issue because construction of the Handbook in relation to the Agreement is unnecessary to resolving the ultimate controversy presented in this case.

Again, the threshold question we answer in a *Halliburton* case is whether an employer may unilaterally alter or terminate an agreement. *In re ReadyOne Industries, Inc.*, 400 S.W.3d at 170. Assuming arguendo that Appellant is correct and that the Agreement stands alone, the plain terms of the Agreement itself give Appellant the power to "change or modify this arbitration policy from time to time without advance notice or the consent of employees[,]" except where arbitration claims have already been filed. Thus, Appellant's attempt to prove the Agreement is not illusory because it is a stand-alone document unaffected by overriding modification language from the Handbook is irrelevant and not outcome-determinative in this case. *Cf. In re 24R, Inc.*, 324 S.W.3d 564, 567-68 (Tex. 2010)(where employee manual language allowing for policy alteration not incorporated against arbitration agreement by reference, and where terms of agreement itself did not provide for alteration, no *Halliburto*n savings clause required). Appellant clearly possesses the power to alter the Agreement, if not by the general terms of the

Manual, then by the specific, explicit terms of the Agreement itself.

In light of the fact that the first *ReadyOne Industries* factor has been satisfied, the ultimate issue of whether the alteration power renders the Agreement illusory under *Halliburton* turns on whether the Agreement's savings clause adequately cabins Appellant's ability to avoid arbitration, not on whether Appellant relies on the Manual or the Agreement itself as justification for modifying the Agreement. Any assessment of the documents' relationships to each other would be advisory and an improper exercise of the judicial function. *See In re S.N.*, 272 S.W.3d 45, 60 (Tex.App.--Waco 2008, no pet.)(courts of appeals should be wary of issuing advisory opinions on issues unnecessary to an appeal's resolution). We therefore decline to address this issue as unnecessary to the appeal's disposition. *See* TEX.R.APP.P. 47.1.

### *Halliburton* Savings Clause

In Issue Two, Appellant and Appellee dispute whether the Agreement's savings clause, which prevents dmDickason from altering the Agreement only after an employee has submitted a claim to arbitration, adequately restrains Appellant's modification powers as required by *Halliburton*. In *Halliburton*, the Texas Supreme Court held that language preventing an employer from retroactively applying arbitration agreement changes to claims of which it had actual knowledge, combined with a provision providing 10 days advance notice to employees before unilateral termination of the agreement, rendered the agreement non-illusory because it restricted the employer from "avoid[ing] its promise to arbitrate by amending the provision or terminating it altogether." *Halliburton*, 80 S.W.3d at 570.

Appellant contends that "*Halliburton* did not set the minimum floor restrictions that must be contained in a savings clause" but that it only required *some* restrictions on the right to amend or terminate. They urge us to adopt the approach of our sister court in San Antonio and hold that

6

a savings clause is adequate under *Halliburton* where it prevents amendments from applying retroactively only after arbitration has begun. *See Nabors Drilling USA, L.P., v. Pena*, 385 S.W.3d 103 (Tex.App.--San Antonio 2012, pet. denied).

Appellant reads *Nabors Drilling* too narrowly and glosses over a key distinction between the savings clause at play there and the one contained in their Agreement. Appellant's claim that the savings clause in *Nabors Drilling* was "worded nearly identically to the one in this case" is incorrect. This Agreement's savings clause provides for modification of the Agreement without notice to Appellee, whereas the savings clause at issue in *Nabors Drilling* effectively gave employees 10 days of prior notice before any changes took effect. *See Nabors Drilling*, 385 S.W.3d at 105. There, the prior notice provision and the freeze on applying modifications to claims already under arbitration, when read together, created a 10-day notice window in which an employee could file an arbitration claim and thereby estop the employer from avoiding its arbitration commitment with respect to those claims. *See id*. at 107-08 (savings clause valid because it gave employees 10-days' notice before changes came into effect and prohibited retroactive application of modifications to claims already submitted to arbitration). Likewise, the Eastland, Corpus Christi, and Houston First District Courts of Appeals also upheld arbitration agreements in the cases Appellant cites not solely because they prevented the employer from reneging on the agreement once arbitration commenced, but because the savings clause mechanisms as a whole created notice windows allowing employees to avail themselves of opportunity to arbitrate outstanding claims before the policy changed. *See Nabors Wells Services, Ltd. v. Herrera*, Nos. 13-08-00397-CV, 13-08-00451-CV, 2009 WL 200987, at *4-*5 (Tex.App.--Corpus Christi Jan. 27, 2009, no pet.)(memo. op.)(agreement could be amended "at any time by giving at least 10 days' notice to current Employees"); *In re Champion*

*Technologies, Inc.*, 222 S.W.3d 127, 131 (Tex.App.--Eastland 2006, pet. denied)(program "may be amended by [Champion] at any time by giving at least 30 days' notice to current Employees"); *In re Kellogg Brown & Root,* 80 S.W.3d 611, 616 (Tex.App.--Houston [1st Dist.] 2002, orig. proceeding)("Kellogg agreed to give at least 10 days notice before modifying or terminating the Plan . . .").

In reviewing our own prior precedent on this issue, we have previously placed great emphasis on prior notice as a component of a *Halliburton* savings clause. In *In re Datamark, Inc.*, 296 S.W.3d 614 (Tex.App.--El Paso 2009, orig. proceeding), we held that an employer's "ability to modify or terminate" an arbitration agreement "at any time without giving prior notice to its employees[,]" including after arbitration had already begun, rendered its promise to arbitrate illusory under *Halliburton*. *Id.* at 618. Where a savings clause does not prohibit retroactive application of modifications that take effect immediately, *cf. In re Halliburton*, 80 S.W.3d at 569-70,[2] prior notice language is critical, since notice prior to an alteration gives "employees ample time to file any requests for arbitration and ensure[] that the company [can]not avoid the promise to arbitrate." *See In re Datamark*, 296 S.W.3d at 618.

Here, the language in the Agreement's savings clause, like the savings clause in *Datamark*, is so broad that once a claim arises, the forum in which that claim will be decided hinges not on mutually binding promises, but on a race between employer and employee, with the party who acts first controlling the outcome. *See id.* While dmDickason may force the employee to fulfill her promise and arbitrate claims, the employer is bound to its own reciprocal

---

[2] The Court in *Halliburton* did not specify whether the savings clause at issue provided that modifications took effect immediately or after some amount of notice, only that it prohibited retroactive application of modification to known claims. As such, it is unclear whether the savings clause in *Halliburton* operated by creating a notice window, or simply by prohibiting retroactive application of modifications that took immediate effect. By contrast, the *termination* provision of the savings clause specifically provided that termination could only occur after 10 days' notice to the employee. *See Halliburton*, 80 S.W.3d at 569-70.

promise only when the employee reaches the arbitrator's door before the employer can unilaterally revise or terminate the agreement without notice and at its own discretion. *See In re Datamark*, 296 S.W.3d at 618*; see also Webster*, 128 S.W.3d at 230 n.2 (listing federal cases noting that scenario weighs in favor of illusoriness ruling). Because Appellant's ability to select which claims it arbitrates is restrained only by the speed at which it can alter or terminate the Agreement before formal arbitration commences, its promise was illusory. Since an illusory promise is not valid consideration, Appellee received nothing of value in exchange for her own promise to arbitrate, and an enforceable contract never formed.

Appellee asks us to go one step further and read *Halliburton* as requiring not only notice prior to retroactive application of modifications, but a prohibition against *all* retroactive applications of modifications to claims accrued before modification. In support of her position, Appellee directs our attention to *Peleg*, 140 Cal.Rptr.3d at 63-4, in which the California Court of Appeals, interpreting Texas law under a contract's choice-of-law provision, held that *Halliburton* does set floor restrictions on a savings clause by requiring it to prohibit retroactive application of any agreement modifications to claims that have already accrued, or of which the employer has actual knowledge on the date of modification. *Id.* The California court, in turn, relies on a line of Fifth Circuit cases holding that "notice is insufficient [under *Halliburton*] when retroactive amendment is possible" because the arbitration agreement is still "capable of being retroactively modified" to exclude certain accrued claims. *Carey,* 669 F.3d at 205, 207; *see also Torres v. S.G.E. Management, L.L.C.*, 397 Fed.Appx. 63, 67-8 (5th Cir. 2010)(not designated for publication); *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). The Dallas Court of Appeals has also held that notice alone is insufficient; a savings clause must "state that any modifications will only apply prospectively" to be valid under *Halliburton*. *See Rao*, 336

S.W.3d at 421.

In *Peleg*, the court criticizes the notice window mechanism established by the savings clauses in *Kellogg* and *Champion Technologies* as being illusory per se under *Halliburton*, noting the great potential for employers to abuse inside knowledge to manipulate the process, and citing as an example a case where an employer changed the agreement "to provide greater protection against liability" for a meritorious employment claim, then gave the employee 30 days' notice, induced the employee to refrain from filing an arbitration claim by promising to settle, and then refused to settle after the notice window has expired. *See Peleg*, 140 Cal.Rptr.3d at 62.

We do not have occasion to consider whether a savings clause that creates a notice window situation described above is illusory under *Halliburton*. The Agreement's savings clause at bar did not provide even cursory notice of an upcoming change to Appellee. Instead, we assess whether the Agreement is illusory by its own terms. By reserving itself the plenary power to unilaterally alter or terminate the agreement at any point prior to formal arbitration without allowing Appellee the opportunity to avail herself of the procedure to which she initially agreed, Appellant retained the power to avoid arbitration altogether. As such, its promise was illusory, and the trial court did not err by refusing to compel arbitration in the absence of an enforceable, mutually binding arbitration agreement. Issue Two is overruled.

The judgment of the trial court is affirmed.


May 21, 2014

YVONNE T. RODRIGUEZ, Justice

Before Rivera, J., Rodriguez, J., and Barajas, Senior Judge
Barajas, Senior Judge (Sitting by Assignment)