# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10531

MICHAEL NELSON,

       Plaintiff - Appellant

v.

WATCH HOUSE INTERNATIONAL, L.L.C.,

       Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

March 2, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

CARL E. STEWART, Chief Judge:

Plaintiff-Appellant Michael Nelson ("Nelson"), a former employee of Defendant-Appellee Watch House International, L.L.C. ("Watch House"), appeals the district court's order granting Watch House's motion to compel arbitration and dismissing Nelson's claims. The district court held, *inter alia*, that the parties' arbitration agreement was not illusory under *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002). Because we conclude that the parties' agreement contains no *Halliburton*-type savings clause that requires advance notice before termination is effective, we REVERSE and REMAND.

No. 15-10531

I.

On March 18, 2010, Watch House offered Nelson a position as a Recurrent Training Instructor for the Federal Air Marshal Program at Dallas, Texas. That same day, Watch House sent Nelson an electronic copy of its employee handbook, entitled, "Employee Handbook, Safety, Arbitration Plan and Drug/Alcohol Policy." Pertinent here, the employee handbook contained Watch House's Arbitration Plan (the "Arbitration Plan" or the "Plan"), which included the following language:

> As a condition for reviewing your application for employment and if employed, continued employment . . . [Company] and the Applicant/Employee designated below mutually agree to arbitrate claims relating to his/her being considered for employment and subsequent employment, if any, as specified below.

> The Company and Applicant/Employee each voluntarily promise and agree to submit any claim covered by this agreement to binding arbitration. We further agree that arbitration pursuant to this agreement shall be the sole and exclusive remedy for resolving any such claims or disputes. . . .

> It is mutually agreed that this document shall govern and apply to the resolution of all claims and/or disputes between and among Applicant/Employee and the Company . . . concerning: (1) Any federal, state, or local laws, regulations, or statutes prohibiting employment discrimination (such as, without limitation, race, color, sex, national origin, age, disability, religion) and harassment . . . [and] (4) Any claim for failure to hire or wrongful discharge of any kind. . . .

> This agreement is issued with the authority of the Company and is binding on the Company. This Agreement may not be altered except by consent of the Company and shall be immediately effective upon notice to Applicant/Employee of its terms, regardless of whether it is signed by either Agreeing Party. Any change to this Agreement will only be effective upon notice to Applicant/Employee and shall only apply prospectively.

Watch House employed Nelson from March 31, 2010, until March 12, 2014. Nelson alleges that, during this time, his coworkers harassed him based

2

## No. 15-10531

on his religion and his race. Nelson specifically alleges that his coworkers made racial comments based on his being in an interracial relationship, which he eventually reported to his supervisor. About fifteen days after reporting the racial comments, Watch House terminated Nelson.

Nelson filed suit in federal district court, alleging, *inter alia*, that he was discharged in violation of Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code. Watch House moved to compel arbitration pursuant to the Arbitration Plan. Nelson opposed that motion, primarily arguing that: (1) he did not fall within the Plan's definition of "employee," because he did not sign the Plan and the Plan defines "employee" as "the individual whose signature is affixed hereto;" and (2) the Plan was unenforceable because it was illusory under, *inter alia*, *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002), and *Lizalde v. Vista Quality Markets*, 746 F.3d 222 (5th Cir. 2014).[1] The district court disagreed, granting Watch House's motion to compel and dismissing Nelson's lawsuit without prejudice.

Nelson timely appealed. On appeal, Nelson raises three arguments: (1) that the Arbitration Plan is illusory because it fails to include a savings clause related to existing claims and disputes and requiring advance notice of termination;[2] (2) that Nelson does not fall within the Plan's definition of

---

[1] On appeal, Watch House appears to argue that Nelson waived his argument that the Arbitration Plan is illusory by failing to raise it in the district court. *See, e.g.*, *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) ("Under this Circuit's general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate 'extraordinary circumstances.'"). Our review of the record reflects that Nelson adequately briefed his argument to the district court such that there has been no waiver.

[2] Nelson also argues that the Arbitration Plan is illusory because the first page of Watch House's employee handbook, which contains the Plan, states, "[T]he procedures, practices, policies and benefits described here may be modified or discontinued from time to time," and because Watch House's Handbook and Policy Acknowledgement form states, "[T]he Company reserves the right to . . . revoke [its] policies and practices and any of [its] terms at any time with or without notice." Because we conclude that the language in the Arbitration Plan alone renders the Plan illusory, we need not reconcile language contained

No. 15-10531

"employee" and so is not bound to arbitrate; and (3) that the district court abused its discretion in considering inadmissible evidence in ruling on Watch House's motion. Because we agree with Nelson's first argument, we need not reach the latter two issues.

II.

We review *de novo* the district court's grant of Watch House's motion to compel arbitration. *Lizalde*, 746 F.3d at 225. We first consider whether Watch House and Nelson agreed to arbitrate this particular type of dispute. *See, e.g.*, *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). This requires that we ask two questions: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quoting *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007)). Nelson does not challenge that his employment-related claims fall within the scope of the Arbitration Plan. Rather, he challenges the first question, arguing that the Plan is illusory and, therefore, unenforceable.

Though the Federal Arbitration Act "reflects a liberal federal policy favoring arbitration," *id.* at 205 (internal quotation marks and citation omitted), that policy "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties," *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). Instead, "to determine whether an agreement to arbitrate is valid, courts apply ordinary state-law principles that govern the formation of contracts." *Carey*, 669 F.3d at 205 (internal quotation marks and citation omitted).

---

in other Watch House documents. *Cf. Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 915–16 (5th Cir. 2014); *Torres v. S.G.E. Mgmt., L.L.C.*, 397 F. App'x 63, 65–66 (5th Cir. 2010).

No. 15-10531

Both parties agree that Texas law governs. Under Texas law, an arbitration agreement, "like other contracts," must be supported by consideration. *Lizalde*, 746 F.3d at 225 (quoting *Mendivil v. Zanios Foods, Inc.*, 357 S.W.3d 827, 831 (Tex. App.–El Paso 2012)). Though a mutual agreement to arbitrate claims is sufficient consideration to support an arbitration agreement, the agreement is illusory "[w]here one party has the unrestrained unilateral authority to terminate its obligation to arbitrate." *Id.*; *see also Carey*, 669 F.3d at 205 ("Under Texas law, an arbitration clause is illusory if one party can 'avoid its promise to arbitrate by amending the provision or terminating it all together.'" (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 567 (2010) (per curiam))).

This is not to say, however, "that if a party retains any ability to terminate the agreement, the agreement is illusory." *Lizalde*, 746 F.3d at 226. In *Halliburton*, the seminal Texas case, an employee argued that an arbitration agreement was illusory because it purported to grant an employer the unilateral right to terminate or modify an arbitration agreement. *See* 80 S.W.3d at 569–70. In concluding that the arbitration agreement was not illusory, the Texas Supreme Court relied upon two key provisions—the agreement provided that "no amendment shall apply to a Dispute of which . . . [employer] had actual notice on the date of amendment" and that "termination shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." *Id.* at 569–70. Because of these two provisions, the Texas Supreme Court held that the employer could not "avoid its promise to arbitrate by amending or terminating [the arbitration agreement] altogether." *Carey*, 669 F.3d at 206 (quoting *Halliburton*, 80 S.W.3d at 570); *see also In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (explaining that the *Halliburton* court "held that because the [arbitration agreement] contained a 'savings clause'—

No. 15-10531

including a ten-day notice provision and a provision that any amendments would only apply prospectively—that prevented the employer from avoiding its promise, the arbitration agreement was not illusory" (citing *Halliburton*, 80 S.W.3d at 570)).

Following *Halliburton*, we have had several occasions to consider whether parties' arbitration agreements were illusory. *See, e.g., Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 918 (5th Cir. 2014); *Lizalde*, 746 F.3d at 225–26; *Carey*, 669 F.3d at 205–09; *Morrison*, 517 F.3d at 253–57. Most recently, we articulated a simple, three-prong test to determine whether a *Halliburton*-type savings clause sufficiently restrains an employer's unilateral right to terminate its obligation to arbitrate. *See Lizalde*, 746 F.3d at 226. "[R]etaining termination power does not make an agreement illusory so long as that power (1) extends only to prospective claims, (2) applies equally to both the employer's and employee's claims, and (3) so long as advance notice to the employee is required before termination is effective." *Id.* (citing *Halliburton*, 80 S.W.3d at 569–70).

Despite *Lizalde*'s three-part test, Appellees argue that cases from our circuit pre-dating *Lizalde* and decisions from the Texas Supreme Court suggest that an employer's unilateral right to terminate an arbitration agreement does not render the agreement illusory so long as the agreement meets the first prong of *Lizalde*, *i.e.*, so long as the employer's termination power extends only to prospective claims. This argument is unsupported by our precedent and decisions from Texas courts.

It is true that, at times, we have held that arbitration agreements failed to meet *Halliburton* solely because the agreement contained no express limitation on an employer's power to make unilateral changes to an arbitration agreement that have "retroactive effect," meaning "changes . . . that would strip the right of arbitration from an employee who has already attempted to

6

invoke it," *Carey*, 669 F.3d at 205, or changes that apply to "disputes which had arisen and of which [the employer] had notice prior" to the change, *Morrison*, 517 F.3d at 257. However, consistent with *Lizalde*'s three-prong test, we have never published a decision holding that an arbitration agreement satisfied *Halliburton* where the agreement applied only to prospective claims but did not also require advance notice. *See Sharpe*, 769 F.3d at 918 (prospective claims only and 10-day notice window); *Lizalde*, 746 F.3d at 224–26 (prospective claims only and 10-day notice window). Nor has the Texas Supreme Court so held. *See, e.g.*, *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010) (per curiam) (prospective claims only and 14-day notice window); *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607–08 (Tex. 2005) (per curiam) (prospective claims only and 30-day notice window); *Halliburton*, 80 S.W.3d at 569–70 (prospective claims only and 10-day notice window).[3]

Though the Texas Supreme Court has not yet had the occasion to discuss *Lizalde*'s three-part formulation, numerous decisions from Texas' intermediate appellate courts suggest that *Lizalde* appropriately tracked *Halliburton* and its progeny. *See, e.g.*, *Temp. Alts., Inc. v. Jamrowski*, No. 08-13-00166-CV, ___ S.W.3d ___, ___ 2014 WL 2129518, at *4–5 (Tex. App.–El Paso May 21, 2014) (collecting cases). Indeed, in *Temporary Alternatives, Inc.*, the Texas Court of Appeals, El Paso Division, rejected the same argument that Watch House makes today. *See id.* at *4–5. At issue there was whether the parties'

---

[3] In a line of decisions, the Texas Supreme Court has discussed *Halliburton*, but not specifically applied it to hold that an arbitration agreement was or was not illusory. *See, e.g.*, *In re 24R Inc.*, 324 S.W.3d at 566–68 (discussing *Halliburton*, but holding that a stand-alone arbitration agreement did not grant the employer a unilateral termination right such that a *Halliburton*-type savings clause was required); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227–32 (Tex. 2002) (discussing *Hallburton* but remanding for the trial court to resolve an ambiguity). Nothing about these cases' discussion of *Halliburton* in dicta suggest that the Texas Supreme Court would hold that an arbitration agreement that limits termination only to prospective claims, but that does not require advance notice, would survive *Halliburton*.

arbitration agreement, which *did not* require advance notice of termination but which *did* limit termination only to prospective claims, adequately restrained the employer's unilateral termination power as required by *Halliburton.  Id.* at *1, 4.  The employer argued that such a limitation to only prospective claims, alone, was sufficient because "*Halliburton* did not set the minimum floor restrictions that must be contained in a savings clause, but . . . only required *some* restrictions on the right to amend or terminate."  *Id.* at *4.  The court rejected this argument, reasoning that decisions from numerous Texas Courts of Appeals "upheld arbitration agreements . . . not solely because they prevented the employer from reneging on the agreement once arbitration commenced, but because the savings clause mechanisms as a whole created notice windows allowing employees to avail themselves of the opportunity to arbitrate outstanding claims before the policy changed."  *Id.* at *4 (collecting cases).

*Temporary Alternatives, Inc.*'s, rejection of this argument is consistent with *Lizalde*'s three-part test, which provides that a *Halliburton*-type savings clause is insufficient unless it provides *both* advance notice and a limitation to only prospective claims.  *See Lizalde*, 746 F.3d at 226.  Under the rule of orderliness, we are bound by *Lizalde*'s advance notice requirement unless a subsequent Texas appellate court has clearly rejected our prior interpretation of Texas law.  *See, e.g., F.D.I.C. v. Abraham*, 137 F.3d 264, 268–69 (5th Cir. 1998) ("[O]ne panel of this court cannot disregard, much less overrule, the decision of a prior panel.  Adherence to this rule is no less immutable when the matter determined by the prior panel is the interpretation of state law. . . . Thus, when a panel is considering a governing question of state law on which a prior panel has ruled, the subsequent panel's obligation to follow that ruling is not alleviated by intervening decisions of intermediate state appellate courts unless such 'subsequent state court decisions . . . are *clearly contrary* to a

No. 15-10531

previous decision of this court.'" (quoting *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir. 1991)).  As discussed above, no Texas appellate court has done so; rather, *Temporary Alternatives, Inc.*, has followed *Lizalde*.

In sum, having carefully reviewed case law from our circuit and Texas courts, we are convinced that *Lizalde*'s three-part test remains an accurate statement of Texas law.  Accordingly, we now turn to applying *Lizalde* to the language of Watch House's Arbitration Plan at issue.

III.

There is no dispute here that Watch House's Arbitration Plan satisfies the second prong of *Lizalde* by applying equally to claims made by both Watch House and Nelson.  *See Lizalde*, 746 F.3d at 226.  Rather, Nelson focuses our attention on the following language in the Plan:

> This agreement may not be altered except by consent of the Company and shall be immediately effective upon notice to Applicant/Employee of its terms, regardless of whether it is signed by either Agreeing Party.  Any change to this Agreement will only be effective upon notice to Applicant/Employee and shall only apply prospectively.

Nelson argues that this language renders the Plan illusory because, *inter alia*, it fails to include a *Halliburton*-type savings clause that requires advance notice of termination.  We agree.

As mentioned *supra*, much of the parties' briefing is dedicated to whether Watch House's Arbitration satisfies the first prong of *Lizalde*, *i.e.*, whether the Plan truly extends only to prospective claims.  *See id.* at 226.  We need not resolve that issue today.  Even if there is some question as to whether the Plan applies only to prospective claims and therefore survives the first prong of *Lizalde*, the Plan unquestionably fails the third, advance notice, prong.  *See id.*

A comparison between the language of the arbitration agreement that we approved in *Lizalde* and the language of Watch House's Arbitration Plan is illustrative.  *See id.* at 224.  In *Lizalde*, the parties' agreement provided that

9

"Company shall have the right to prospectively terminate [the Arbitration Agreement]. Termination is not effective for Covered Claims which accrued or occurred prior to the date of the termination. Termination is also not effective until ten (10 days) after reasonable notice is given to Claimant." *Id.* We held that this language sufficiently restrained the employer's unilateral termination power as required by *Halliburton*, because it restricted termination of the agreement "to prospective claims, [did] not apply to claims which accrued prior to termination, and [was] not effective until ten days after reasonable notice is given to the employee." *Id.* at 226.

The same cannot be said of Watch House's Arbitration Plan. Here, the Plan provides that Watch House may make unilateral changes to the Plan, purportedly including termination, and that such a change "shall be immediately effective upon notice to" employees. Watch House's retention of this unilateral power to terminate the Plan without advance notice renders the Plan illusory under a plain reading of *Lizalde*, which is supported by recent decisions from Texas intermediate courts. *See, e.g.*, *Temp. Alts., Inc.*, 2014 WL 2129518, at *4–5 (collecting cases).

## IV.

For these reasons, we conclude that Watch House's Arbitration Plan was illusory from the outset. Therefore, Nelson is not bound by the Plan, and Watch House may not compel arbitration based on the Plan. Accordingly, we REVERSE the district court's grant of Watch House's motion to compel, and REMAND for proceedings consistent with this opinion.