**Reverse, Render, and Remand; Opinion filed October 22, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00404-CV

**CBRE, INC. AND YOLANDA MEDLOCK, Appellants**
**V.**
**LATRICHA TURNER, Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-15912**

## MEMORANDUM OPINION

Before Justices Myers, Evans, and Brown
Opinion by Justice Myers

CBRE, Inc. and Yolanda Medlock appeal the trial court's denial of their motion to compel arbitration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West 2015) (appeal of order under Federal Arbitration Act); *id.* § 171.098(a)(1) (West 2011) (appeal of order under Texas Arbitration Act). The sole issue in this case is whether the parties' agreement to arbitrate is unenforceable because it is illusory. We conclude the agreement is not illusory and that the trial court erred by denying the motion to compel arbitration. Accordingly, we reverse the trial court's order denying the motion to compel arbitration, render judgment ordering arbitration of Turner's claims, and remand the case to the trial court for further proceedings.

## BACKGROUND

Turner was an employee of CBRE, Inc. In December 2011, before Turner began working for CBRE, she signed an employment agreement. The agreement contained many provisions,

including her starting salary, benefits, information about drug testing and background checks, as well as the following provisions about arbitration and termination of the agreement:

> *Arbitration:*
>
> In the event of any dispute or claim between you and CBRE (including all of its employees . . . ), we jointly agree to submit all such disputes or claims to confidential binding arbitration and waive any right to a jury trial. The claims and disputes subject to arbitration include all claims arising from or related to your employment or the termination of your employment including, but not limited to, claims for wages or other compensation due, claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, or medical condition or disability); claims for benefits . . . ; and claims for violation of any federal, state, or governmental law, statute, regulation, or ordinance. All claims or disputes subject to arbitration . . . must be brought in the party's individual capacity, and not as a plaintiff or class member in any class, collective, or representative action. The arbitration (i) shall be conducted pursuant to the provisions of the arbitration rules of the state in which you are or were last employed by CBRE . . . or in absence of state law the Federal Arbitration Act; and (ii) shall be heard before a retired State or Federal judge in the county containing the Company's office in which you were last employed. The Company shall pay for all fees and costs of the Arbitrator; however, each party shall pay for its own costs and attorneys' fees, if any, except as otherwise required by law.
>
> *Termination:*
>
> CBRE is an "at will" employer which means that either you or CBRE may terminate the employment agreement at any time with or without notice or cause.

CBRE terminated Turner's employment in 2017, and she brought suit against appellants.

In her petition, Turner alleged her supervisor sexually harassed her. Turner reported the harassment to Medlock, the manager of her department. In January 2017, Turner reported to Medlock that other female employees had told Turner the supervisor had sexually harassed them but they were scared to report it to Medlock for fear they would be terminated. Several days later, "Turner was called into the front office and she was told that she was being terminated because of her 'tone' on a phone call with a customer." She alleged that but for her report of the supervisor's sexual harassment, she would not have been terminated.

Turner brought a claim against CBRE for violations of the Texas Commission on Human Rights Act, and she brought a claim against Medlock for defamation. Appellants moved to compel arbitration. Turner filed a response, asserting the arbitration agreement was not enforceable because it was illusory. The trial court denied appellants' motion to compel arbitration.

## ARBITRATION

In their sole issue on appeal, appellants contend the trial court abused its discretion by denying their motion to compel arbitration.

We review a trial court's denial of a motion to compel arbitration for an abuse of discretion. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex. 2006) (orig. proceeding). We defer to the trial court's findings of fact if the evidence supports them, but we review legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). To compel arbitration, a party must show a valid agreement to arbitrate exists and the claims asserted are within the agreement's scope. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003). The burden then shifts to the party opposing arbitration to present an affirmative defense to enforcement. *Id*.

Arbitration agreements are interpreted under traditional contract-interpretation principles. *Id.* If a contract can be given a certain legal meaning or interpretation, then it is not ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). An unambiguous contract is interpreted as a matter of law. *Id.* If a contract's meaning is uncertain and doubtful, or if the contract is reasonably susceptible to more than one meaning, then the contract is ambiguous. *Id.* The interpretation of an ambiguous contract is an issue for the trier of fact. *Id.* at 394. But if a contract is not ambiguous, "its construction and meaning become a question of law for the court to determine." *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.) (quoting *Dedier v. Grossman*, 454 S.W.2d 231, 234 (Tex. Civ. App.—Dallas 1970, writ ref'd

n.r.e.)). "[T]he primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker*, 650 S.W.2d at 393. "To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of a contract so that none will be rendered meaningless." *Id.* (emphasis omitted).

In this case, there is no dispute that Turner signed the employment agreement containing the arbitration policy and that the policy applies to Turner's claims against appellants. Instead, Turner opposed appellants' motion to compel arbitration on the ground that the arbitration policy was not enforceable because it was illusory.

"An arbitration agreement is illusory if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015). "[A]n arbitration provision remains illusory if the contract permits one party to legitimately avoid its promise to arbitrate, such as by unilaterally amending or terminating the arbitration provision and completely escaping arbitration." *Id.*; *see In re 24 R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) ("An arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether.").

Turner argues the arbitration clause is illusory because CBRE could avoid its promise to arbitrate by declaring the agreement terminated at any time. In support of this argument, Turner relies on *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002), and cases following it. In that case, Halliburton adopted a Dispute Resolution Program, and it told its existing employees that by continuing to work after January 1, 1988, they would be accepting the new program. *Id.* at 568. The plaintiff continued working for Halliburton, and he sued the company when he was demoted. Halliburton moved to compel arbitration, which the trial court and the court of appeals denied. *Id.* The plaintiff asserted the Program was illusory because it was a promise based on the plaintiff's continued employment. The supreme court disagreed: "[T]he Program is not *dependent* on

–4–

continuing employment. Instead it was *accepted* by the employee's continuing employment." *Id.* at 569. The supreme court also considered the plaintiff's argument that the Plan was illusory because Halliburton retained the right to modify or discontinue the Program. The court stated the Program was not illusory because the Program provided that no amendment to the Program would apply to a complaint of which Halliburton had actual notice, that termination of the Program would not occur until ten days after the employees received notice of the termination and termination of the Program would not apply to disputes that arose before the date of termination. *Id.* at 569–70.

Turner argues that the arbitration policy in this case is illusory because it does not have provisions like the ones in *Halliburton* that require CBRE to give advance notice of any plan to terminate the employment agreement containing the arbitration policy and that extend the arbitration policy to apply to claims arising before termination of the policy. Turner argues in her brief:

> As drafted, if a CBRE employee sought to invoke arbitration with the Company pursuant to the Agreement, nothing would prevent CBRE from amending or revoking the Agreement to arbitrate and making those changes applicable to that pending dispute if it determined that arbitration was no longer in its interest. In effect, the [A]greement allows CBRE to hold its employees to the promise to arbitrate while reserving its own escape hatch.

We disagree. First, the employment agreement contains no provision for its modification. Thus, unlike the employment agreements in other cases, the employment agreement in this case did not give CBRE the right to modify the employment agreement unilaterally or the right to terminate the arbitration policy without terminating the employment agreement. And second, as explained below, the arbitration policy necessarily continued after termination of the rest of the employment agreement.

Turner's claim was essentially one for wrongful termination in retaliation for her reporting sexual harassment.[1]  The termination of Turner's employment terminated the employment agreement except for those parts that continued beyond the termination of the contract, either expressly or necessarily.[2]  The arbitration policy necessarily continued beyond the termination of the rest of the employment agreement because it stated it applied to "claims arising from . . . the termination of your employment."  If the arbitration policy did not continue to be effective after the termination of the employment agreement, then it could never apply to claims concerning termination of employment because those claims could not be brought until after termination.  We must interpret the employment agreement "to harmonize and give effect to all the provisions of a contract so that none will be rendered meaningless."  *Coker*, 650 S.W.2d at 693.  To comply with this rule of contract construction, we must interpret the arbitration policy as applying to claims arising from the termination of Turner's employment even though the termination of her employment also terminated most of the employment agreement.  Therefore, even though CBRE and Turner had the right to terminate the employment agreement at any time and without notice to one another, the arbitration policy continued to be effective after the employment agreement's termination because its provisions would otherwise have no meaning.  Because CBRE did not have the right to end the arbitration policy's applicability to claims based on Turner's termination, either through unilateral modification or termination of the employment agreement, the arbitration policy was not illusory as applied to Turner.

Turner cites several cases she asserts stand for the proposition that after the supreme court's opinion in *Halliburton*, an arbitration policy must have express provisions for advance notice of amendment or termination of the policy and that the amendment or termination does not apply to

---

[1] Turner states in her brief she brought suit "seeking damages because she was terminated for reporting violations of the law."

[2] The employment agreement contained a confidentiality provision that expressly continued beyond the employment agreement's termination because it stated it "is ongoing even after employment with the Company terminates."

pre-existing claims.  She asserts that any arbitration policy lacking those provisions is illusory.

Those provisions may save an otherwise-illusory arbitration policy, and some arbitration policies

may be illusory that lack those provisions.  However, none of the cases Turner cites have held an

arbitration policy like the one in this case is illusory when it lacks those provisions.[3]

---

[3] Turner cites the following cases:

*Nelson v. Watch House Int'l, LLC*, 815 F.3d 190, 191, 195–96 (5th Cir. 2016) (arbitration policy was illusory because it permitted employer to alter policy without advance notice to employee);

*Lizalde v. Vista Quality Markets*, 746 F.3d 222, 224, 227 (5th Cir. 2014) (arbitration policy was not illusory even though employer could unilaterally terminate policy because policy required 10-day notice to employee before termination of policy became effective and termination did not apply to pre-existing claims);

*Torres v. S.G.E. Mgmt., LLC*, 397 F. App'x 63, 68 (5th Cir. 2010) (arbitration policy was illusory because it permitted company to modify policy without advance notice to investors and permitted retroactive modifications);

*Morrison v. Amway Corp.*, 517 F.3d 248, 257 (5th Cir. 2008) (arbitration policy was illusory because it permitted employer to modify policy retroactively);

*Tanoury v. Symphony Serv. Corp.*, 3:12-CV-1142-L, 2013 WL 705121, at * (N.D. Tex. Feb. 5, 2013) (arbitration policy provided that employer's changes to the policy were only effective after ten days' notice to employee; however, consideration of whether parties were mutually bound by promises to arbitrate was unnecessary because underlying agreement provided required consideration);

*Johnson v. J.C. Penney Corp., Inc.*, A-13-CA-1079-LY, 2014 WL 2765692, at *2–3 (W.D. Tex. June 18, 2014) (arbitration policy was not illusory because it did not grant employer unilateral right to amend policy's rules; instead, policy permitted employer "to clarify or correct typographical errors in the rules, strike rules that are found to be unenforceable by a court or arbitrator, and apply any such modifications only to cases begun 90 days after such change is published");

*Magdaleno v. PCM Constr. Servs., LLC*, No. H-12-2862, 2014 WL 1760942, at *7 (S.D. Tex. May 1, 2014) (arbitration policy was illusory because it applied only to claims brought by employees and allowed employer in its "sole discretion,  to change, revise or eliminate any of its policies as described [t]herein");

*In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, (Tex. 2010) (orig. proceeding) (per curiam) (arbitration policy was not illusory because it provided that any modification or termination of the policy would not be effective "until at least 14 days after written notice has been provided to you" and would not apply to injuries occurring before date of amendment or modification);

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 231 (Tex. 2003) (arbitration policy was ambiguous on whether parties intended language in employment application that employer "reserves the right to unilaterally abolish or modify any personnel policy without prior notice" applied to arbitration policy);

*Temporary Alternatives, Inc. v. Jamrowski*, 511 S.W.3d 64, 66, 68 (Tex. App.—El Paso 2014, no pet.) (arbitration policy was illusory because employer "does possess the power to unilaterally avoid arbitration by amending the agreement without notice at any time before [the employee] files an arbitration claim"; policy permitted employer to "change or modify this arbitration policy from time to time without advance notice or consent of the employees");

*Weekly Homes, L.P. v. Rao*, 336 S.W.3d 413 (Tex. App.—Dallas 2011, pet. denied) (arbitration policy was illusory because it gave employer "the unilateral power, at any time, to elect not to enforce any policy or provision");

*In re Datamark, Inc.*, 296 S.W.3d 614, 617–18 (Tex. App.—El Paso 2009, orig. proceeding) (arbitration policy was illusory because it permitted employer to revoke or modify policy without advance notice to employee);

*Nabors Well Servs., Ltd. v. Herrera*, No. 13-08-00397, 2009 WL 200987, at *4–5 (Tex. App.—Corpus Christi, Jan. 27, 2009, orig. proceeding) (mem. op.) (arbitration policy not illusory because it required employer to give employees ten days' notice of termination of policy and termination would not be effective for proceedings brought before termination date);

*In re Champion Techs., Inc.*, 222 S.W.3d 127, 131, 134 (Tex. App.—Eastland 2006, orig. proceeding, pet. denied) (arbitration policy was not illusory because it permitted amendment or termination only after giving employees 30 days' notice and amendment or termination would not apply to proceedings brought before effective date of amendment or termination);

*Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 248–49 (Tex. App.—San Antonio 2006, orig. proceeding) (arbitration policy was not illusory because it required employer to give 10 days' notice of intent to modify or terminate policy and modification or termination would not apply to proceedings brought before effective date of modification or termination);

We conclude the arbitration policy in this case is not illusory. Therefore, the trial court abused its discretion by denying appellants' motion to compel arbitration. We sustain appellants' sole issue on appeal.

## CONCLUSION

We reverse the trial court's order denying the motion to compel arbitration, render judgment ordering arbitration of Turner's claims, and remand the case to the trial court for further proceedings.

/Lana Myers/
LANA MYERS
JUSTICE

180404F.P05

---

*In re Kellogg Brown & Root*, 80 S.W.3d 611, 616 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (arbitration policy was not illusory because it required employer to give 10 days' notice of amendment or termination of the policy and amendment or termination would not apply to proceedings brought before effective date of modification or termination and policy was binding on both parties).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CBRE, INC. AND YOLANDA
MEDLOCK, Appellants

No. 05-18-00404-CV      V.

LATRICHA TURNER, Appellee

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-15912.
Opinion delivered by Justice Myers.
Justices Evans and Brown participating.

In accordance with this Court's opinion of this date, we reverse the order of the trial court denying appellants CBRE, Inc. and Yolanda Medlock's motion to compel arbitration, **RENDER** judgment ordering arbitration of appellee Latricha Turner's claims against appellants CBRE, Inc. and Yolanda Medlock, and **REMAND** the cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants CBRE, INC. and Yolanda Medlock recover their costs of this appeal from appellee Latricha Turner.

Judgment entered this 22nd day of October, 2018.