COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| A-1 FREEMAN MOVING & STORAGE LLC AND A-1 FREEMAN NORTH AMERICA INC., | § | No. 08-23-00001-CV |
| | § | Appeal from the |
| Appellants, | § | 448th Judicial District Court |
| v. | § | of El Paso County, Texas |
| ARACELI ORTIZ GALINDO, | § | (TC# 2022DCV1753) |
| Appellee. | | |

## MEMORANDUM OPINION

This is an interlocutory appeal from an order denying a motion to compel arbitration filed by Appellants A-1 Freeman Moving & Storage LLC and A-1 Freeman North America Inc. (collectively, the A-1 Freeman Entities) seeking to compel Appellee Araceli Ortiz Galindo to arbitrate her negligence claim against them. For the reasons set forth below, we reverse in part and affirm in part.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Ortiz Galindo's accident

Ortiz Galindo began working for Appellant A-1 Freeman Moving & Storage, LLC (A-1 Freeman Moving) in May of 2019 and was involved in a work-place accident in January of 2022.

In June 2022, Ortiz Galindo filed a petition in the trial court, which she subsequently amended in July 2022, seeking damages for bodily injury and lost wages, naming both of the A-1 Freeman Entities.[1]

In her amended petition, Ortiz Galindo alleged that while employed by Appellant A-1 Freeman Moving, she was attempting to lower herself from a ladder on a truck she believed was owned by Appellant A-1 Freeman North America, Inc. (A-1 Freeman NA) and fell backwards, causing her injuries. Ortiz Galindo alleged the truck did not have a ramp and its back door did not work, which led to her fall. She further claimed she had previously reported the truck issues to both A-1 Freeman Entities, and they therefore knew or should have known of this allegedly "dangerous condition" but failed to take any action to correct it. Ortiz Galindo sought to hold both entities jointly responsible for their alleged negligence, contending, among other things, that they failed to provide her with a safe working environment and/or proper equipment, failed to correct a known dangerous condition, and failed to establish adequate safety procedures in the workplace.

## B.   The A-1 Freeman Entities' motion to compel arbitration

After filing their initial responses to Ortiz Galindo's petition, the A-1 Freeman Entities filed a joint motion to compel arbitration, alleging A-1 Freeman Moving had an arbitration agreement in place, referred to as the "Mutual Agreement to Arbitrate" (the MAA), which provided for mandatory arbitration of any claims its employees might have against it, including those for job-related injuries suffered in the scope of their employment. The MAA stated that the agreement

---

[1] Ortiz Galindo initially named three entities in her lawsuit: A-1 Freeman Moving & Storage, El Paso, LLC; A-1 Freeman Moving & Storage, Inc.; and A-1 Freeman North America Inc. Pursuant to a Rule 11 Agreement, A-1 Freeman Moving & Storage, El Paso, LLC was nonsuited on July 27, 2022. And pursuant to that same agreement, Ortiz Galindo amended her complaint to substitute A-1 Freeman Moving & Storage LLC for A-1 Freeman Moving & Storage, Inc.

to arbitrate applied to A-1 Freeman Moving as well as its affiliated companies but, as discussed in more detail below, the MAA failed to name any such companies.

The A-1 Freeman Entities submitted an affidavit from Cary Davis, A-1 Freeman Moving's Safety Director and Records Custodian, averring that he was attaching true and correct copies of three documents Ortiz Galindo signed both before and after her injury in which she acknowledged she was aware of the arbitration agreement and agreed to its terms. These documents included: (1) a "Notice of Employment Application" Ortiz Galindo hand-signed on the day she was hired, stating she aware of A-1 Freeman Moving's "Mandatory Arbitration Plan" and had been given a copy of it; (2) a "Receipt and Arbitration Acknowledgment" form she allegedly electronically signed on her first day at work, again acknowledging the existence of the Mandatory Arbitration Plan and stating she had been given a copy of the MAA; and (3) an "Acknowledgment" form she signed the week after she was injured, acknowledging the MAA's existence and that it covered her injury, and stating that an employee's acceptance of benefits under A-1 Freeman Moving's injury-benefit plan constitutes an irrevocable acceptance of its arbitration agreement.

Ortiz Galindo opposed the motion, supported by her own affidavit, arguing: (1) the MAA was illusory because it gave A-1 Freeman Moving the unilateral right to alter or terminate the agreement at any time; (2) the record did not conclusively establish that she received a copy of the MAA at any time during or after her employment or that she agreed to its terms; (3) she did not recall electronically signing the acknowledgment form on her first day of work; and (4) the third document she signed was procedurally unconscionable because it was given to her in English and she only spoke Spanish, and because she was taking pain medication when she signed it. And finally, Ortiz Galindo argued that even if she agreed to arbitrate her negligence claims with A-1

Freeman Moving, she entered into no such agreement with A-1 Freeman NA, and she therefore could not be required to arbitrate her claims with the latter entity.

In their reply, the A-1 Freeman Entities did not present any additional evidence to rebut Ortiz Galindo's claims that she did not receive a copy of the MAA or that the third document she signed was procedurally unconscionable. Instead, they argued the undisputed evidence demonstrated Ortiz Galindo signed all three documents and, by law, the court must presume she read and understood all three of them. They further argued that Ortiz Galindo's affidavit, in which she alleged she did not speak English and she was taking pain medication after her injury, was insufficient, standing alone, to sustain a finding of procedural unconscionability. In addition, they denied the MAA was illusory, asserting it contained a savings clause providing that the agreement would be in existence even after Ortiz Galindo's employment with the company terminated. And finally, they argued Ortiz Galindo ratified the agreement to arbitrate by accepting and retaining medical benefits under the company's Benefit Plan.

### C. The trial court's ruling

At the A-1 Freeman Entities' request, the trial court held a hearing via Zoom on the motion to compel arbitration, at which the attorneys for both sides appeared. However, none of the parties provided the court with any additional evidence at the hearing; instead, they relied on the affidavits they had previously filed. Following the hearing, the trial court denied the A-1 Freeman Entities' motion to compel arbitration without specifying its reasons. This appeal followed.

### ISSUES ON APPEAL

In four issues, the A-1 Freeman Entities contend the trial court erred by denying their motion to compel arbitration, arguing: (1) they established that a valid and enforceable arbitration agreement (the MAA) was in place to which Ortiz Galindo consented, and Ortiz Galindo's claims

4

fall within the scope of the agreement; (2) Ortiz Galindo failed to meet her burden of establishing her affirmative defenses that the MAA was illusory and/or the documents she signed agreeing to its terms were procedurally unconscionable; (3) Ortiz Galindo ratified the MAA by accepting and retaining medical benefits under the Benefit Plan; and (4) A-1 Freeman NA was entitled to compel arbitration, as it was a related entity named in the MAA. In the alternative, the A-1 Freeman Entities urge that if the Court believes factual issues exist regarding whether Ortiz Galindo had notice of the Arbitration Agreement or the circumstances surrounding her receipt and signatures, we should remand the matter to the trial court for an evidentiary hearing.

### APPLICABLE LAW AND STANDARD OF REVIEW

Arbitration is a contractual proceeding by which the parties, in order to obtain a speedy and inexpensive final disposition of disputed matters, consent to submit the controversy to arbitrators for resolution. *See In re Phelps Dodge Magnet Wire Co.*, 225 S.W.3d 599, 605 (Tex. App.—El Paso 2005, no pet.) (citing *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992)). A party seeking to compel arbitration has the burden to prove a valid arbitration agreement exists and the claims raised fall within the agreement's scope. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011). Courts determine whether an enforceable arbitration agreement exists by applying state contract law principles. *See In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005). An employer attempting to enforce an arbitration agreement has the burden to show the agreement meets all requisite contract elements. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003). This includes establishing the employee consented to the agreement. *See Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 204 (Tex. 2021) (recognizing that because arbitration is a matter of consent, not coercion, the question of whether a valid arbitration agreement exists includes proving the other

5

party consented to the agreement); *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, (1989) (recognizing that arbitration "is a matter of consent, not coercion").

Under standard contract principles, the fact that a party has signed an arbitration agreement creates a "strong presumption" that the party has consented to its terms. *Wright v. Hernandez*, 469 S.W.3d 744, 756–57 (Tex. App.—El Paso 2015, no pet.) (citing *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 208-10 (Tex. App.—El Paso 2004, no pet.)); *see also Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013) ("Typically, a party manifests its assent by signing an agreement."). If the moving party meets its burden of establishing a valid agreement, the burden shifts to the party opposing arbitration to raise a defense against its enforcement. *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (per curiam). As with any other contract, a party seeking to avoid being bound by an arbitration agreement may raise various affirmative defenses, such as "fraud, unconscionability or voidness under public policy," but has the burden of proving any such defense. *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 500 (Tex. 2015) (citing *In re Poly–Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008)).

We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *APC Home Health Servs., Inc v. Martinez*, 600 S.W.3d 381, 389 (Tex. App.—El Paso 2019) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009)). When a trial court improperly denies a party's right to arbitrate pursuant to a valid and enforceable arbitration agreement, the court has abused its discretion. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (orig. proceeding) (per curiam) (citing *In re Halliburton Co.*, 80 S.W.3d at 573). The trial court's determination of whether an arbitration agreement is valid and enforceable is a legal question subject to de novo review. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. An appellate

6

court may uphold the trial court's decision on a motion to compel arbitration on any appropriate legal theory urged below. *APC Home Health Servs.*, 600 S.W.3d at 389.

## THE MUTUAL AGREEMENT TO ARBITRATE WAS NOT ILLUSORY

Given its potentially dispositive nature, we first address the argument Ortiz Galindo made in the trial court, which she renews on appeal, that the MAA was illusory because it gave A-1 Freeman Moving the authority to unilaterally terminate or alter the agreement at any time. We agree with the A-1 Freeman Entities, however, that while the MAA was subject to termination or modification, it contained an adequate savings provision that prohibited A-1 Freeman Moving from making any such changes in regard to previously accrued claims.

### A. Applicable law

An arbitration agreement, like any other contract, requires mutual consideration from both parties, i.e., a promise that binds both parties. *See Temp. Alternatives, Inc. v. Jamrowski*, 511 S.W.3d 64, 67 (Tex. App.—El Paso 2014, no pet.); *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (recognizing that "[a]rbitration agreements, like other contracts, must be supported by consideration"). Promises are illusory and unenforceable when they fail to bind the promisor, who retains the option of discontinuing performance. *Royston*, 467 S.W.3d at 505. Therefore, a promise to arbitrate is illusory and unenforceable if the contract permits one party to legitimately avoid its promise to arbitrate, "such as by unilaterally amending or terminating the arbitration provision and completely escaping arbitration." *Id.* at 505 (citing *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010); *J.M. Davidson*, 128 S.W.3d at 236).

However, an arbitration agreement subject to modification or termination will not be deemed illusory if it contains an effective "savings clause," which (1) provides notice to the employee of any upcoming amendments and (2) provides that any claim occurring prior to the

7

modification or termination will remain subject to the agreement, thereby restraining the promisor's ability to avoid the agreement. *See Odyssey Healthcare*, 310 S.W.3d at 424 (holding that an arbitration clause in a workers' compensation plan was not illusory where, although the employer reserved the right to "amend, modify, or terminate the Plan at any time," it also provided that "no such amendment or termination will alter the arbitration provisions . . . with respect to . . . an Injury occurring prior to the date of such amendment or termination"); *see also Halliburton*, 80 S.W.3d at 570 (finding savings clause was effective where it included a ten-day notice provision together with a provision that any amendments would only apply prospectively, which prevented the employer from avoiding its promise); *but see Temp. Alternatives, Inc. v. Jamrowski*, 511 S.W.3d 64, 67, 71 (Tex. App.—El Paso 2014, no pet.) (finding a savings clause ineffective where employer had the right "to unilaterally alter or terminate the agreement at any point prior to formal arbitration without allowing [the employee] the opportunity to avail herself of the procedure to which she initially agreed" thereby giving the employer the "power to avoid arbitration altogether").

### B. The MAA contained an effective savings clause

The MAA, which had an effective date of April 1, 2009, specifies "COVERED CLAIMS SHALL BE EXCLUSIVELY RESOLVED BY BINDING ARBITRATION," and covered claims include claims arising from "[a]ny injury suffered by Claimant while in the Course and Scope of Claimant's employment with Company, including but not limited to, claims for negligence, gross negligence and all claims for personal injuries. . . . "[2] Section 10 of the MAA provides that A-1 Freeman Moving has "the right to prospectively terminate this Agreement" but provides that any

---

[2] The MAA defines a "Claimant" as a person "employed by Company and has a Covered Claim." And, as discussed in more detail below, the "Company" is defined as those entities listed on "Schedule A," but that schedule is not included in the appellate record.

8

termination is not effective until "ten (l0) days after reasonable notice is given to Claimant." More importantly, it expressly provides that Termination is "not effective for Covered Claims which accrued or occurred prior to the date of the termination," which provision restrains A-1 Freeman Moving's right to unilaterally avoid arbitration of previously accrued claims.

Serving as an additional restraint on A-1 Freeman Moving's right to unilaterally terminate the agreement is Section 11, which states the agreement "shall survive the employer-employee relationship between the Company and the Claimant and shall apply to any Covered Claim whether it arises or is asserted during or after termination of the Claimant's employment with the Company or the expiration of any benefit plan." The Supreme Court of Texas has found similar language in an arbitration agreement, providing that the agreement would "continue[] beyond, and is not affected by, a termination of employment," to belie a finding that the employer retained any right to modify or abolish its terms. *See In re 24R, Inc.*, 324 S.W.3d 564, 568 (Tex. 2010); *see also In re Whataburger Restaurants LLC*, 645 S.W.3d 188, 198 (Tex. 2022) (arbitration agreement was not illusory where it provided that the duty imposed on "both the Company and on employees to arbitrate all legally recognized claims or disputes arising from the employment relationship shall continue beyond, and not be affected by, the termination of an employee's employment").

Ortiz Galindo, however, contends that Section 12 of the Agreement gives A-1 Freeman Moving the right to unilaterally modify the Agreement at any time, with no savings provision. Section 12, which is labeled "Sole and Entire Agreement," provides:

> This Program Agreement constitutes the parties' complete agreement and supersedes any prior agreement regarding arbitration of Covered Claims which occur during the Term of this Agreement. Any agreement contrary to, or modifying, any of the provisions included in this Agreement must be entered into, in writing, by the chief executive officer of Company. Oral representations made before or after Employee is hired do not alter this Agreement.

We do not construe this section as giving A-1 Freeman Moving the right to *unilaterally* modify the MAA. Instead, this section—as the heading suggests—simply memorializes that the MAA constitutes the parties' "sole and entire agreement" and appears only to address situations in which the parties *mutually* agree to a modification of the agreement's terms, providing that any such agreements must be in writing and signed by the CEO. We find nothing else in the MAA suggesting A-1 Freeman Moving intended to reserve the right to unilaterally modify its arbitration policy. *See In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 781 (Tex. 2006) (concluding arbitration agreement was not illusory where nothing in the relevant documents expressly reserved the employer a unilateral right to modify its arbitration policy).

Accordingly, we reject Ortiz Galindo's argument that the trial court could have relied upon a finding that the MAA was illusory as a basis for denying the A-1 Freeman Entities' motion to compel arbitration. We therefore turn to the question of whether Ortiz Galindo agreed to arbitrate her claims with A-1 Freeman Moving.

## THE NOTICE OF EMPLOYMENT APPLICATION

The A-1 Freeman Entities argue Ortiz Galindo's hand-written signature on the Notice of Employment Application (the Notice), which she signed on the day she was hired, established she agreed to arbitrate her claims against them. The Notice stated that by completing and submitting her employment application, Ortiz Galindo understood and agreed that:

> A-1 FREEMAN MOVING AND STORAGE, LLC. (the "Company") has a Mandatory Arbitration Plan (the "Plan"), which is the required and exclusive way for applicants, employees and the company to resolve any and all disputes. The Company has given me a copy of this plan. I have read the plan and understand it. I agree to resolve any dispute between the Company and me arising out of this application or, if the Company hires me, out of my employment, through the Mandatory Arbitration Plan.

10

On appeal, Ortiz Galindo argues the Notice does not establish that she received a copy of the MAA or otherwise agreed to its terms, pointing out that the Notice stated she was being given a copy of the Company's "Mandatory Arbitration Plan (the 'Plan')," rather than the MAA. Ortiz Galindo points out there is no document entitled "Mandatory Arbitration Plan" in the record, and instead, the only arbitration agreement in the record is the MAA, yet the Notice does not indicate she was given a copy of the MAA. Ortiz Galindo analogizes her situation to that in *Hawk Steel Industries, Inc. v. Stafford*, No. 02-19-00040-CV, 2019 WL 3819506 (Tex. App.—Fort Worth August 15, 2019, pet. denied) (mem. op.). In *Hawk*, an employee signed an acknowledgment form stating he was given a copy of his employer's Summary Performance Plan (the SPD). *Hawk Steel Industries, Inc.*, 2019 WL 3819506 at *1. However, the SPD did not contain an arbitration agreement; instead, the arbitration agreement was housed in an entirely different document not referenced in the acknowledgment form. *Id.* The court held this was insufficient to establish that the employee received a copy of the arbitration agreement itself. *Id.* at *3-5.

Here, the record similarly fails to show Ortiz Galindo received a copy of the arbitration document referenced in the Notice. However, the Notice itself contained a sufficient summary of the MAA's terms to put Ortiz Galindo on notice that she was agreeing to arbitrate any and all claims that she might have against A-1 Freeman Moving during the course of her employment. As the Supreme Court of Texas has long recognized, an employee's acceptance of an arbitration agreement can be shown through evidence that an employee received notice of the arbitration agreement and continued to work after that time. *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 163 (Tex. 2006) (per curiam) ("An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law.") (citing *In re Dillard Dep't Stores, Inc.*, 181 S.W.3d 370, 375 ((Tex. App.—El

11

Paso 2005), *subsequent mandamus proceeding*, 186 S.W.3d 514 (Tex. 2006)); *see also Halliburton*, 80 S.W.3d at 569 (finding that employee accepted arbitration clause by continued employment after receiving notice). And in determining whether an employee received adequate notice of a binding arbitration agreement, the "notice analysis" is not confined to whether the employee received the underlying agreement itself, but to "all communications between the employer and employee." *In re Dallas Peterbilt*, 196 S.W.3d at 162 (citing *Halliburton*, 80 S.W.3d at 568–69).

Accordingly, an employer can establish an employee received notice of the terms of the employer's arbitration plan based on evidence that the employee received a "summary of the agreement to arbitrate." *Id.* (citing *Halliburton*., 80 S.W.3d at 569 (holding that a notice and summary of employer's arbitration plan provided to the employee was unequivocal notice of the plan's terms)). The pivotal question is whether the summary itself provided unequivocal notice of the terms of the arbitration agreement and its mandatory nature. *See Halliburton*., 80 S.W.3d at 569 (holding that a notice and summary given to the employee was unequivocal notice); *see also In Re Dillard Dep't Stores, Inc*., 153 S.W. 3d at 149 (citing *Hathaway v. General Mills, Inc*., 711 S.W.2d 227, 299 (Tex. 1986)) ("An employee has unequivocal notice [of an arbitration agreement] if she has been informed of the nature of the program and the certainty of their imposition."). As Ortiz Galindo points out, if the summary fails to unequivocally convey the terms of the arbitration agreement or the mandatory nature of the agreement, that failure may raise a question of fact regarding whether the employee knowingly consented to arbitrate her claims. *See HSS Sys., L.L.C. v. Lucan*, No. 03-10-00761-CV, 2011 WL 2297716, at *4 (Tex. App.—Austin June 9, 2011, no pet.) (mem. op.) (where summary set forth in brochure given to employees indicated the arbitration agreement was voluntary, the summary failed to provide notice of the mandatory nature of the

arbitration agreement); *see also Hawk*, 2019 WL 3819506 at *5 (summary given to employees held inadequate where it provided that "certain" claims and disputes would be subject to arbitration, and the document was silent on what those "certain" claims were). As well, when the employer gives the employee "conflicting signals" regarding the nature of the arbitration agreement, a question of fact may exist as to whether the employee received adequate notice of the agreement's terms. *See Hathaway*, 711 S.W.2d at 229 (holding that unequivocal notice was question of fact when employee received written notice of policy modification but was told by superior "not to worry" about it and he would "take care of it").

Here, the Notice Ortiz Galindo signed clearly stated A-1 Freeman Moving had a "mandatory" arbitration plan that was the "required and exclusive way for applicants, employees and the company to resolve any and all disputes." And it further stated Ortiz Galindo "agreed to resolve any dispute between the Company and me arising out of this application or, if the Company hires me, out of my employment, through the Mandatory Arbitration Plan." Moreover, Ortiz Galindo did not allege Cuevas gave her any "conflicting signals" about the terms of the arbitration agreement itself or its mandatory nature. Accordingly, as a matter of law, the record establishes that Ortiz Galindo was given unequivocal notice of the terms of A-1 Freeman Moving's mandatory arbitration plan and that she consented to those terms by continuing her employment with the company.[3]

Accordingly, we conclude that the trial court erred in denying A-1 Freeman Moving's motion to compel arbitration. We sustain issues one and two as to A-1 Freeman Moving.[4]

---

[3] Because we conclude the Notice signed by Ortiz Galindo established the existence of a valid, enforceable arbitration agreement, we need not consider whether the subsequent Receipt and Arbitration Acknowledgment form or post-injury Acknowledgment form did so.

[4] In light of this conclusion, we need not address the A-1 Freeman Entities' issue three in which they claim Ortiz Galindo ratified the arbitration agreement by accepting benefits under the Benefit Plan. Nor do we find it necessary

13

## WHETHER A-1 FREEMAN NA IS ENTITLED TO COMPEL ARBITRATION

Finally, we address Ortiz Galindo's argument that even if she consented to arbitrate her claims against her employer, A-1 Freeman Moving, she did not consent to arbitrate her claims against A-1 Freeman NA, as A-1 Freeman NA was neither a signatory to the MAA nor referenced in any of the agreements she signed. The A-1 Freeman Entities respond that the MAA itself provided Ortiz Galindo with notice she was agreeing to arbitrate her claims against A-1 Freeman Moving as well as any of its related companies, to include A-1 Freeman NA. Alternatively, they argue they are "related" companies and that both companies should therefore be entitled to compel arbitration of Ortiz Galindo's claims. We reject both arguments.

### A. The missing MAA Schedule A

As the A-1 Freeman Entities point out, the MAA stated the agreement was between Claimants and the "Company," and it defined "Company" to include A-1 Freeman Moving and all affiliated or related companies as follows:

> Company means the "the entity(ies) and person(s) set forth on Schedule A which is attached hereto. The term 'Company' also includes all employees, officers, directors, agents, representatives, franchisors, affiliated or related companies of the entity(ies) and/or person(s) listed in Schedule A (other than Claimant) whose alleged act or omission was the cause of any Covered Claim."

The A-1 Freeman Entities contend that A-1 Freeman NA was listed as a related company in "Schedule A," which was attached—or supposed to be attached—to the MAA. However, they also acknowledge that due to a "clerical error," the schedule was "inadvertently omitted" from the documents attached to their motion to compel. Although the A-1 Freeman Entities suggest we should rely on the representations made in their brief regarding Schedule A, which are contradicted

---

to address their request in the alternative that we remand the matter for an evidentiary *Tipps* hearing to further develop the record with respect to whether Ortiz Galindo had notice of the Arbitration Agreement and the circumstances surrounding her receipt of documents and signatures on them.

by Ortiz Galindo, we may not do so, as such purported evidence is outside the appellate record and was not considered by the trial court in its decision-making process.[5] TEX. R. APP. P. 38.1(i); *see also Marshall v. Hous. Auth. of City of San Antonio*, 198 S.W.3d 782, 789 (Tex. 2006) (court will not consider factual assertions that appear solely in briefs and are not supported by the record) (citing TEX. R. APP. P. 55.2(g), (i) (requiring petitioner's statement of facts and argument to be supported by appropriate references to the record)); *Perry v. S.N.*, 973 S.W.2d 301, 303 (Tex. 1998) ("We may not consider factual assertions that appear solely in the appellate briefs" and that were not based on evidence before the trial court). Accordingly, we cannot agree with the A-1 Freeman Entities that the MAA gave Ortiz Galindo notice she was agreeing to subject her claims against A-1 Freeman NA to arbitration.

## B. Related entities

The A-1 Freeman Entities' argument that A-1 Freeman Moving and A-1 Freeman NA are "related companies" reads in its entirety as follows: "Additionally, whether or not expressly identified in Schedule A, A-1 Freeman North America, Inc. is a related company and as such is a party to the Arbitration Agreement and may move to compel arbitration and join in this appeal of the denial." Although we do not disagree that there may be instances in which a "related" entity has the right to compel arbitration despite being a non-signatory to an arbitration agreement, the A-1 Freeman Entities have not directed our attention to any evidence in the appellate record to

---

[5] Ortiz Galindo further points out that the A-1 Freeman Entities did not provide a copy of Schedule A in their Appendix. Even if they had done so, we would not be able to consider the document, as it was not part of the appellate record. *See Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 773 (Tex. App.—El Paso 2015, no pet.) ("Documents attached to a brief as an exhibit or appendix, but not appearing in the appellate record, cannot be considered on appellate review."); *see also Fibela v. Wood*, 657 S.W.3d 664, 672 (Tex. App.—El Paso 2022, no pet.) (because the appellate record consists of the clerk's record and, if necessary, the reporter's record, the "attachment of additional documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal and, therefore, the documents cannot be considered") (citing TEX. R. APP. P. 34.1; *Barton v. Barton*, 584 S.W.3d 147, 152-53 (Tex. App.—El Paso 2018, no pet.)).

support their argument that A-1 Freeman Moving and A-1 Freeman NA are in fact related companies, nor do they point to any evidence describing what the nature of their relationship might be. Moreover, they have not cited to any legal authority to support their conclusory statement that A-1 Freeman NA is entitled to compel arbitration under these circumstances.

The Texas Rules of Appellate Procedure provide that an appellant's brief must contain a clear and concise argument, including appropriate citations to authority and to the record. *See* TEX. R. APP. P. 38.1(i). "This requirement is not satisfied by merely uttering brief conclusory statements unsupported by legal citations." *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) (citing *Sweed v. City of El Paso,* 195 S.W.3d 784, 786 (Tex. App.—El Paso 2006, no pet.)). Accordingly, we conclude that A-1 Freeman NA did not preserve this issue for our review. The A-1 Freeman Entities have waived their argument in this regard, as their conclusory statements are not supported by citation to legal authorities. TEX. R. APP. P. 38.1(i); *see also In re A.N.G.*, 631 S.W.3d 471, 476-77 (Tex. App.—El Paso 2021, no pet.) (explaining that issues "may be waived when appellant fails to provide citations, argument, or analysis" and the Court is "not required to perform research nor develop an argument for an appellant"); *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.) ("And, just as importantly, existing legal authority applicable to the facts and the questions we are called on to answer must be accurately cited. . . . If we are not provided with existing legal authority that can be applied to the facts of the case, the brief fails."). Accordingly, we conclude that the trial court did not err in denying A-1 Freeman NA's motion to compel arbitration. We overrule the A-1 Freeman Entities' issue four.

## CONCLUSION

We reverse the trial court's order denying the motion to compel arbitration as to A-1 Freeman Moving, affirm the trial court's order denying the motion to compel arbitration as to A-1 Freeman NA, and remand to the trial court for further proceedings consistent with our opinion.


LISA J. SOTO, Justice

August 23, 2023

Before Rodriguez, C.J., Palafox, Soto, JJ.
Palafox, J., dissenting without separate opinion